Jules **CIAMAICHELO** and **Rob Stevens, Inc.,**

v.

**INDEPENDENCE BLUE CROSS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2002.
Decided Dec. 20, 2002.

Richard A. Sprague, Philadelphia, for appellant.

William R. Caroselli, Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, LEADBETTER, Judge, and COHN, Judge.

OPINION BY President Judge COLINS.

Independence Blue Cross appeals the order of the Court of Common Pleas of Bucks County that overruled its preliminary objections to the declaratory judgment action filed by Jules Ciamaichelo and Rob Stevens, Inc. We granted Independence Blue Cross's (Blue Cross) petition for permission to appeal an interlocutory order pursuant to Pa. R.A.P. 1311.

In their complaint Ciamaichelo and Stevens, filed on behalf of themselves and other subscribers, policyholders, and members of Independence Blue Cross, alleged misconduct in Blue Cross's accumulation of excessive surplus or reserves. The complainants aver that the surplus is larger than the number reported to the Insurance Department and far exceeds the industry standard, and that Blue Cross acquired the excessive surplus for non-charitable purposes and has improperly used surplus funds in for-profit enterprises. They allege violations of the Nonprofit Corporation Law of 1988,[1] breach of contract, and breach of fiduciary duty and seek declaratory relief as well as an accounting, imposition of a constructive trust, inspection of Blue Cross's books, and other relief with regard to disposition of amounts held in excess of that which is necessary for its financial solvency.

Blue Cross filed preliminary objections raising the trial court's lack of subject matter jurisdiction, a demurrer based on the filed-rate doctrine as a bar to collateral attacks on agency-approved rates, failure to join the Insurance Department as an indispensable party, lack of standing to pursue a claim under the nonprofit corporation law, and the legal insufficiency of the complaint with respect to the breach of contract and breach of fiduciary claims. The trial judge overruled the objections. In an opinion filed pursuant to Pa. R.A.P. 1925(b), the trial court states that the issues were not clear and free from doubt; the opinion does not specifically discuss any one of the objections as the basis for its order.

In its petition for permission to appeal the interlocutory order, Blue Cross avers that jurisdiction over the complainants' rate-related claims based on an alleged excessive surplus is exclusively with the Insurance Department, that their complaint is barred by operation of the filed-rate doctrine, and that the complainants have no standing under the nonprofit corporation law to pursue their claims and the relief sought is prohibited thereunder.

**Jurisdiction**

The courts of common pleas have subject matter jurisdiction over all actions and proceedings except where exclusive jurisdiction is vested by statute or general rule in another court. 42 Pa.C.S. § 931. The courts of common pleas have original jurisdiction over suits for damages even against public utilities or insurers, which are subject to the exclusive regulation by an administrative agency. *DeFrancesco v. Western Penna. Water Company*, 499 Pa. 374, 453 A.2d 595 (1982); *Feingold v. Bell of Penna.*, 477 Pa. 1, 383 A.2d 791 (1978); *Poorbaugh v. Penna. Public Utility Commission*, 666 A.2d 744 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 544 Pa. 678, 678 A.2d 367 (1996); *Mattes v. Commonwealth*, 94 Pa.Cmwlth. 1, 503 A.2d 78 (1985). In cases where the administrative agency is charged with regulating the subject matter of a controversy, but cannot provide complete redress, the doctrine of primary jurisdiction requires judicial abstention until the administrative agency has adjudicated the issues within its jurisdiction and expertise. *Poorbaugh.* Where the matter is not one requiring the special competence of the administrative agency, but rather is one that the court is equally well suited to determine, the court must not defer to the agency. *Id.*

As a special class of insurer, Blue Cross is subject to regulation by the Insurance Department, which must approve its rates, reserves, and surplus, as well as the investment of its reserves and surplus. The

**1.** 15 Pa.C.S. §§ 5101–5997.

Insurance Department has exclusive jurisdiction over the setting of rates, approving reserves and surpluses, and the hospital plan corporation's investment of its reserves and surplus. As stated in the law regulating hospital plan corporations,[2]

The rates charged to subscribers by hospital plan corporations, all rates of payments to hospitals made by such corporations pursuant to the contracts provided for in this chapter, all acquisition costs in connection with the solicitation of subscribers to such hospital plans, the reserves to be maintained by such corporations, the certificates issued by such corporations representing their agreements with subscribers, and any and all contracts entered into by any such corporation with any hospital, shall, at all times, be subject to the prior approval of the department.

40 Pa.C.S. § 6124(a).

Any statute to the contrary notwithstanding, funds of any hospital plan corporation, equal to its reserves, shall be invested in compliance with the requirements of law for the investment of the capital and reserves of life insurance companies. The funds of any such corporation, equal to its surplus, shall be invested in compliance with the requirements of law for the investment of the surplus of life insurance companies.

40 Pa.C.S. § 6123. Every hospital plan corporation must file an annual report, and its books, records, business affairs, and transactions are subject to examination by the Insurance Department at a minimum of every three years. 40 Pa.C.S. § 6125.

The complainants' claims, while characterized as violation of the nonprofit corporation law, breach of contract, and breach of fiduciary duty, are all based first on their allegation that Blue Cross has accumulated excessive reserves (i.e., reserves higher than the industry standard, higher than in past years, higher than necessary to cover its claims and expenses and maintain solvency), and second, on their allegation that Blue Cross has accumulated the excessive reserves for impermissible purposes and has misused the reserve funds by transferring assets to subsidiaries. Approval of rates and reserves are matters within the exclusive jurisdiction of the Insurance Department and are based on statutory formula, actuarial information, and discretionary determinations.[3] The plaintiffs do not request damages or any other form of relief that could be ordered only by the court of common pleas. For these reasons, primary jurisdiction over the question of whether Blue Cross has accumulated excessive reserves is with the Insurance Department as is the question of whether Blue Cross's disposition of reserve funds was in compliance with the applicable law. Blue Cross's objection to the trial court's jurisdiction should have been sustained.

**Filed Rate Doctrine**

Blue Cross argues that the trial court erred in overruling its demurrer under the filed rate doctrine, which it contends, prohibits a collateral attack on rates, and thereby reserves, approved by the Insurance Department.

---

**2.** A hospital plan corporation is a nonprofit corporation engaged in the business of maintaining and operating a nonprofit hospital plan, which is a plan whereby paid subscribers receive hospitalization or related health benefits. 40 Pa.C.S. § 6101.

**3.** *Cf.* Section 301 of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 71, pertaining to computation of reserves for life insurance companies, and 31 Pa.Code §§ 84a.1–84a.8, which set forth minimum reserve standards for health and accident insurance contracts.

 The filed rate doctrine has its origins in *Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922), wherein the plaintiff alleged that the railway company fixed rates in violation of federal antitrust law. The Supreme Court held that the trial court should have dismissed the complaint for failure to state a claim because the rates the railroad charged were approved by the Interstate Commerce Commission; i.e., by approving and fixing the rate, the agency's determination that the rate was reasonable and nondiscriminatory was dispositive of the issues raised in the complaint. This doctrine prevents courts from questioning or changing approved rates to prevent rate discrimination among members of a class of rate payers and to preserve the role of the regulatory agency as rate setter, i.e., the reasonableness of an agency-approved rate is nonjusticiable. *Id.; American Telephone & Telegraph Company v. Central Office Telephone Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998); *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981); *Montana–Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

Pennsylvania appellate courts have applied the filed rate doctrine in *Penna. Power Company v. Penna. Public Utility Commission*, 127 Pa.Cmwlth. 97, 561 A.2d 43 (1989), *affirmed*, 526 Pa. 453, 587 A.2d 312 (1991), to hold that rates approved by the Federal Energy Commission must be given binding effect by the state utility regulator, and in *Philadelphia Suburban Water Authority v. Penna. Public Utility Commission*, 808 A.2d 1044 (Pa.Cmwlth. 2002), to hold that the agency-approved

rate is the only lawful charge and that a utility may not deviate from the filed rate. The Pennsylvania appellate courts have never addressed the doctrine in the present context to bar a civil action against a utility. Judge Albert W. Sheppard Jr. of the Philadelphia Court of Common Pleas applied the filed rate doctrine in *Knipmeyer v. Bell Atlantic Corporation*, 51 Pa. D & C 4th 225, 2001 WL 1179415 (Com.Pl. 2001), to dismiss a class action filed against Bell Atlantic for violations of Pennsylvania unfair trade practices and consumer protection law and conspiracy. He relied primarily on the U.S. Supreme Court's decision in *Central Office Telephone* for the proposition that the filed rate doctrine bars claims including breach of contract, breach of warranty, fraud, unjust enrichment, and false advertising where the plaintiffs essentially are attacking the approved rate and seeking a different rate. As Judge Sheppard Jr. stated in *Knipmeyer*, based on the Public Utility Code's establishment of a statutory filed rate doctrine and on persuasive authority from other jurisdictions,[4] we must conclude that by logical extension, the filed rate doctrine bars claims where the complaint collaterally attacks the filed rate.

 The complaint in the present case presents claims that are all based on the plaintiffs' contention that Blue Cross has accumulated excessive reserves. "Reserves" has been defined as

a sum of money variously computed or estimated, which, with accretions from interest, is set aside, "reserved," as a fund, with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued and contingent claims, and claims ac-

**4.** *E.g., Qwest Corporation v. Kelly*, 59 P.3d 789, 385 Ariz. Adv. Rep. 26 (Ariz.Ct.App. 2002); *Lupton v. Blue Cross and Blue Shield of North Carolina*, 139 N.C.App. 421, 533 S.E.2d 270, *review denied*, 353 N.C. 266, 546 S.E.2d 105 (2000).

crued but contingent and indefinite as to amount or time of payment.

Couch on Insurance 3d, § 2:29 n. 40. Rates and reserves are related concepts. The Insurance Department considers the amount of an insurer's reserves when approving rates, and the collection of premiums based on the rates must inevitably be a factor in the accumulation of excessive reserves. Any determination that Blue Cross has accumulated excessive reserves would necessarily require the recalculation of the approved rates.[5] Because we conclude that the plaintiffs' cause of action is not independent of the rates approved by the Insurance Department, or of its approval of Blue Cross's reserves and investments, the filed rate doctrine bars the plaintiffs' breach of contract, breach of fiduciary duty, and nonprofit corporation law claims, and Blue Cross's demurrer should have been sustained.

Accordingly, the order of the trial court overruling Blue Cross's preliminary objections is reversed, and the complaint it dismissed.

Judge LEAVITT did not participate in this decision.

### *ORDER*

AND NOW, this 20th day of December 2002, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed, and the complaint is dismissed.

---

**5.** *See Lupton,* 533 S.E.2d at 273.