Robert PETTY and R.G. Petty Masonry, on behalf of themselves and all others similarly situated, Petitioners

v.

INSURANCE DEPARTMENT, Respondent.

Jules Ciamaichelo and Robert Stevens, Inc., Petitioners

v.

Insurance Department, Respondent.

Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center, and Thomas C. Mitchell, Petitioners

v.

Pennsylvania Insurance Department, Respondent.

Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center, and Thomas C. Mitchell, Petitioners

v.

Pennsylvania Insurance Department, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2005.
Decided July 6, 2005.

Jonathan Auerbach, Philadelphia and William R. Caroselli, Pittsburgh, for Petitioners.

Terrance A. Keating, Harrisburg, for respondent.

Timothy W. Callahan, II, Philadelphia, for intervenor, Capital Blue Cross.

Joseph R. Podraza, Philadelphia, for intervenor, Independence Blue Cross.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, and LEADBETTER, Judge.

OPINION BY President Judge COLINS.

Before this Court are petitions for review filed in each of the four above-captioned matters respectively by Robert Petty and R.G. Petty Masonry at Docket No. 1501 C.D. 2004, by Jules Ciamaichelo and Robert Stevens, Inc. at Docket No. 1502 C.D. 2004, and by Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Mitchell Chiropractic Center, and Thomas C. Mitchell at Docket Nos. 1503 C.D. 2004 and 1504 C.D. 2004 (collectively referred to hereinafter as Petitioners). Said petitions were filed in response to the June 17, 2004 final orders issued by the Pennsylvania Insurance Department (the Insurance Department), denying class action complaints that Petitioners previously had filed, challenging the propriety of rate approvals and related issues, and dismissing as moot Petitioners' motions to stay these proceedings. In the interest of judicial economy, the above-captioned four petitions have been consolidated for disposition by this Court.

The factual background of the aforementioned petitions follows. Petitioners are subscribers to one or more of the four Pennsylvania Blue Cross/Blue Shield health insurance plans (collectively hereinafter referred to as the "Blues Plans.") In 2001, Petitioners filed alleged class action complaints against each of the four Blues

Plans in various common pleas courts, which complaints sought the same relief as do the present administrative actions filed by Petitioners that are the subject of the present appeal. Specifically, Petitioners' 2001 complaints, as do the present petitions, sought remedies for what Petitioners alleged to be the Blues Plans' improper maintenance of excess reserves.[1]

One of the aforementioned 2001 complaints was filed by Jules Ciamaichelo, one of the Petitioners in the present matter, against Independence Blue Cross (IBC) in Bucks County Common Pleas Court (common pleas court). In response, IBC filed preliminary objections which the common pleas court overruled. IBC then appealed to this Court, which on December 20, 2002, reversed common pleas court and dismissed Ciamaichelo's complaint. *Ciamaichelo v. Independence Blue Cross*, 814 A.2d 800 (Pa.Cmwlth.2002), *petition for allowance of appeal granted*, 574 Pa. 749, 829 A.2d 1158 (2003). In so doing, the Court found that Ciamaichelo's claims for breach of contract, breach of fiduciary responsibility, and other alleged legal violations were actually challenges to the rates, reserves, and surpluses of the Blues Plans, and that common pleas court lacked jurisdiction over Ciamaichelo's claims that reserves were excessive and were accumulated for impermissible purposes. In reaching its decision, the Court acknowledged the Insurance Department's exclusive jurisdiction over the setting of rates, approval of reserves and surpluses, and the applicability of the "filed rate doctrine" that precludes collateral attacks

upon approved rates set by a regulatory agency. Ciamaichelo filed a petition for allowance of appeal to the Supreme Court that was granted on August 27, 2003, and oral argument was scheduled for October 18, 2004; the Supreme Court's final disposition in this matter is still pending.

Throughout 2002 and 2003, the Insurance Department issued a series of data requests to each of the Blues Plans operating in the Commonwealth as part of its own administrative review of the levels of reserves and surpluses held by each Blues Plan pursuant to the Professional Health Services Plan Corporations Act (HPCA), commonly known as the Health Services Plan Act.[2] Specifically, after giving notice in the Pennsylvania Bulletin on August 3, 2002, the Insurance Department conducted a public informational hearing on September 4, 2002, in Harrisburg, Pennsylvania to consider the reserve and surplus levels of each Blues Plan, and interested parties were invited to provide oral statements at the hearing.

On January 17, 2004, the Insurance Department published a notice in the Pennsylvania Bulletin, reporting that it had directed the Blues Plans to "make applications for approval of the reserves and surpluses they maintain under 40 Pa. C.S. Chapter 61." This Court ruled that the foregoing applications, with limited exceptions, could be made available for public comment and could not be maintained by the Blues Plans as confidential.

On January 23, 2004, Petitioners, pursuant to 1 Pa.Code § 35.9,[3] filed essentially

---

1. The term, "reserves" has been defined as

   a sum of money variously computed or estimated, which, with accretions from interest, is set aside, "reserved," as a fund, with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims, and claims accrued and contingent

   claims, and claims accrued but contingent and indefinite as to amount or time of payment.

   Couch on Insurance 3d, § 2.29 n. 40.

2. 40 Pa.C.S. §§ 6301–6335.

3. 1 Pa.Code § 35.9 provides as follows:

similar complaints with the Insurance Department against each of their respective Blues Plans. These complaints cited alleged violations of the Unfair Insurance Practices Act (UIPA)[4], and asked the Insurance Commissioner for: (1) an order declaring that the action brought by Petitioners is properly a class action; (2) an order declaring that the Blues Plans violated Pennsylvania law by accumulating excessive surpluses resulting in excessive profits; (3) an order disposing of amounts held by the Blues Plans in excess of the amount required for their financial solvency; (4) an award of attorneys' fees drawn from the amount determined as excessive; and (5) other appropriate relief. Petitioners also sought discovery material from their respective Blues Plans.

The Insurance Commissioner appointed a presiding officer who directed the Blues Plans to answer Petitioners' complaints. The Blues Plans filed various responses including new matter, motions to stay, and motions to dismiss, to which pleadings Petitioners filed replies. The Blues Plans, in their motions to dismiss, conceded that the Insurance Department was the appropriate forum for determining the propriety of their respective surplus levels, but argued for dismissal of the administrative actions filed by Petitioners because: (1) class actions are not allowed in administrative proceedings; (2) Petitioners failed to state valid claims for relief; (3) Petitioners' claims for payment of attorney fees were improper; and (4) Petitioners were not entitled to discovery. In response, Petitioners argued that in *Ciamaichelo*, this Court impliedly upheld their administrative complaints and estopped the Blues Plans from disputing their validity.

By orders dated June 17, 2004, the Insurance Department dismissed all four administrative complaints on the grounds that: (1) a class action cannot be maintained before the Insurance Department; and (2) Petitioners failed to state a claim for relief because the UIPA affords them no private right of action. Petitioners filed the present four appeals to this Court, all of which are substantially similar and raise the same legal issues. On August 18, 2004, this Court consolidated the four actions. On September 10, 2004, Petitioners filed their consolidated brief in support of their petitions for review, and the Insurance Department filed its brief in opposition thereto.

■ On appeal, Petitioners argue that this case centers about the proper venue for hearing claims regarding violations in

A person complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency. If the complaint relates to a provision in a tariff, policy form or other similar contract document on file with the agency, the document should be identified. A copy of the complaint will be forwarded by the agency to the respondent who will be called upon to satisfy the complaint or to answer the same in writing within the time specified in § 35.35 (relating to answers to complaints and petitions), or such lesser time as may be prescribed by statute, after the date of service of the complaint, unless the agency with or without motion shall prescribe a different time. If, in the judgment of the agency, a violation of a statute or regulation administered or issued by the agency has been alleged and has not been satisfied adequately the agency will either invite the parties to an informal conference, set the matter for a formal hearing, or take another action which in the judgment of the agency is appropriate. In the event that a hearing is held the complainant automatically shall be a party thereto and need not file a petition for leave to intervene.

4. Act of July 22, 1974, P.L. 589, *as amended*, 40 P.S. § 1171.1–1171.15.

operating a nonprofit hospital plan.[5] Petitioners aver that this Court previously has held that such claims must first be presented to the Insurance Department, which has primary jurisdiction over the question of whether any of the Blues maintained excess surpluses. Petitioners also argue that in deference to the result reached in *Ciamaichelo*, they brought the identical claims before the Insurance Department by filing administrative complaints in the form of class actions. Petitioners maintain that after nearly a year and a half from the filing of those complaints and without conducting any hearing, the Insurance Department granted the Blue Plans their motions to dismiss Petitioners' complaints because of their class action format, rather than allowing the complaints to proceed as individual actions. This dismissal, contend Petitioners, forecloses any possibility that Petitioners would have any forum in the Commonwealth in which to adjudicate their claims.

▆ Upon review of the record, we concur with the Insurance Department's June 17, 2004 final orders dismissing Petitioners' class action complaints that challenged the propriety of rate approvals, excess reserves and related issues. Virtually these same issues were previously raised in *Ciamaichelo*, 814 A.2d at 802–803, wherein this Court stated unequivocally that "[t]he Insurance Department has exclusive jurisdiction over the setting of rates, approving reserves and surpluses, and the hospital plan corporation's investment of its reserves and surplus." In *Ciamaichelo*, 814 A.2d at 805, the Court clarified the close relationship between rates and reserves as follows:

> The Insurance Department considers the amount of an insurer's reserves when approving rates, and the collection of premiums based on the rates must inevitably be a factor in the accumulation of excessive reserves. Any determination that Blue Cross has accumulated excessive reserves would necessarily require the recalculation of the approved rates.

(Footnote omitted.) Further, in *Ciamaichelo*, 814 A.2d at 803, 805, where Petitioners previously raised similar arguments challenging the propriety of the Insurance Department's rate approvals and averring that the Blues Plans improperly accumulated excessive reserves, this Court concluded:

> Approval of rates and reserves are matters within the exclusive jurisdiction of the Insurance Department and are based on statutory formula, actuarial information, and discretionary determinations. The plaintiffs do not request damages or any other form of relief that could be ordered only by the court of common pleas. For these reasons, primary jurisdiction over the question of whether Blue Cross has accumulated excessive reserves is with the Insurance Department as is the question of whether Blue Cross's disposition of reserve funds was in compliance with the applicable law. Blue Cross's objection to the trial court's jurisdiction should have been sustained.
>
> . . . .
>
> Because we conclude that the plaintiffs' cause of action is not independent of the rates approved by the Insurance Department, or of its approval of Blue Cross's reserves and investments, the filed rate doctrine bars the plaintiffs' breach of contract, breach of fiduciary

---

**5.** A hospital plan corporation is a nonprofit corporation engaged in the business of maintaining and operating a nonprofit hospital plan, which is a plan whereby paid subscribers receive hospitalization or related health benefits. 40 Pa.C.S. § 6101.

duty, and nonprofit corporation law claims. . . .

(Footnote omitted.) The foregoing in *Ciamaichelo* alludes to the "filed rate doctrine" as barring a breach of contract, breach of fiduciary duty, and nonprofit corporation law claims brought by plaintiffs. The filed rate doctrine defers to the applicable agency having the authority to fix and approve rates, and "prevents courts from questioning or changing approved rates to prevent rate discrimination among members of a class of rate payers and to preserve the role of the regulatory agency as rate setter, i.e., the reasonableness of an agency-approved rate is nonjusticiable. . . . *American Telephone & Telegraph Company v. Central Office Telephone Inc.*, 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998)." *Ciamaichelo*, 814 A.2d at 804. Accordingly, in *Ciamaichelo*, we held that because of the inextricable connection between the Insurance Department's approval of rates and an insurer's reserves and investments, the filed rate doctrine barred plaintiffs' aforementioned claims, which we dismissed in their entirety; they were not remanded for Plaintiffs to refile with the Insurance Department in another format. In this regard, the Insurance Department contends that no class action format exists under the Administrative Code and that there is no viable cause of action for Petitioners pursuant to the UIPA.

■ Additionally, we concur with the Insurance Department's observation that 1 Pa.Code § 35.9, relied upon by Petitioners, does not automatically mandate a hearing, but rather provides that if, in the discretion of the agency, a statutory or regulatory violation has occurred, the agency will either convene an informal conference, conduct a formal hearing, or pursue other action which it deems appropriate in the situation.

Based on the foregoing discussion, we affirm the June 17, 2004 orders of the Insurance Department at Docket No. 1501 C.D. 2004, Docket No. 1502 C.D. 2004, Docket No. 1503 C.D. 2004, and Docket No. 1504 C.D. 2004.

## O R D E R

AND NOW, this 6th day of July 2005, the Orders entered by the Pennsylvania Department of Insurance on June 17, 2004 at Docket No. 1501 C.D. 2004, Docket No. 1502 C.D. 2004; Docket No. 1503 C.D. 2004 and Docket No. 1504 C.D. 2004, are affirmed.

Judge SMITH–RIBNER concurs in the result only.

Judge LEAVITT did not participate in the decision of this case.