924 A.2d 1205

**OLD FORGE SCHOOL DISTRICT, Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Robert Petty, R.G. Petty Masonry, On Behalf Of Themselves And All Others Similarly Situated, Appellants,**

**v.**

**HIGHMARK INC., d/b/a Highmark Blue Cross Blue Shield and Pennsylvania Blue Shield, a Non-Profit Pennsylvania Corporation, Hospital Service Association of Northeastern Pennsylvania, d/b/a Blue Cross of Northeastern Pennsylvania, Commonwealth of Pennsylvania, Insurance Department and Insurance Commissioner of the Commonwealth of Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Submitted Sept. 12, 2006.

Decided June 27, 2007.

William E. Hoese, Esq., Joseph C. Kohn, Esq., Kohn, Swift & Graf, P.C., Jerome M. Marcus, Esq., Jonathan Auerbach, Esq., Berger & Montague, P.C., David Samuel Senoff, Esq., Billet & Connor, P.C., Peter David Winebrake, Esq., Winebrake Law Firm, L.L.C. (The), William R. Caroselli, Esq., Caroselli, Beachler, McTiernan & Conboy, L.L.C., Philadel-

phia, for Lawrence S. Herman, D.C., Nachas, Inc., Jason H. Herman, Robert Petty and R.G. Petty Mason.

Paul Kevin Brobson, Esq., Jack Mentzer Stover, Esq., Buchanan Ingersoll, Harrisburg, for Highmark, Inc.

Sandra L. Ykema, Esq., PA Department of Insurance, York, for Insurance Department of the Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice SAYLOR.

This case involves the issue of whether the Commonwealth Court abused its discretion in awarding attorneys' fees to Highmark, Inc. ("Highmark") on the ground that Appellants, who are subscribers and policyholders of Highmark, engaged in "vexatious" conduct by commencing several actions seeking to challenge Highmark's rates and reserves.

On August 3, 2002, the Pennsylvania Insurance Department (the "Department"), announced that it was beginning a review process regarding the surplus and reserve levels maintained by the Pennsylvania Blue Plans, including Capital Blue Cross ("CBC"), Highmark, Inc. ("Highmark"), Hospital Service Association of Northeastern Pennsylvania ("NEPA"), and Independence Blue Cross ("IBC"). Upon analysis of some initial data submitted by the Blue Plans, the Department concluded that the Blue Plans collectively held substantial reserve and surplus amounts. The Department further found that there was a level at which accumulating additional surplus would be inefficient. Pursuant to this finding, the Department requested that the Blue Plans submit applications for approval of their reserve and surplus levels.

On February 9, 2005, Insurance Commissioner M. Diane Koken issued a determination and order concerning the applications submitted by the Blue Plans. *See In re Applications of Capital Blue Cross et al.,* No. MS05–02–006, *slip op.* (Pa. Ins. Dep't February 9, 2005). The Commissioner defined the

term "surplus" as "what a Plan has in capital after all liabilities have been deducted from assets." *Id.* at 10. She then described three categories of surplus levels: efficient, sufficient, and inefficient. The Commissioner explained that if a plan was operating with a "sufficient" level of surplus, that plan should not include a premium for a risk and contingency factor in filed rates for the next calendar year. She announced that in calendar year 2003, Highmark, CBC, and NEPA operated within their "sufficient" surplus operating ranges, while IBC operated at an efficient level. *Id.* at 37. Observing that the Department received many public comments discussing the possibility of rate relief in the form of rebates or premium reductions, the Commissioner noted that retroactive rate relief was not an appropriate method of handling excess surplus:

> [A]ttempting to target accumulated surplus to one group of ratepayers over another is an inherently problematic and potentially inequitable notion. In fact, a rate rollback, or a rate freeze, could prove detrimental to the marketplace.

*Id.* at 17. She observed, however, that forward-looking rate relief may be appropriate, stating as follows:

> [W]here a Blue Plan has sufficient surplus, forward-looking rate relief would assure that additional surplus is not cumulatively derived from premium income. Thus, for example, it would be appropriate to charge rates that do not include a risk and contingency factor when a Plan has a sufficient level of surplus.

*Id.* at 18.

On March 11, 2005, two petitions for review were filed with the Commonwealth Court challenging the Commissioner's order and determination. *See City of Philadelphia v. Pennsylvania Ins. Dep't*, 889 A.2d 664, 668 (Pa.Cmwlth.2005). The first petition was filed by a group composed of three policyholders, four Blue Cross subscribers, and fourteen public interest groups. The second complaint was filed by the City of Philadelphia based upon its status as an employer who pays premiums to Independence Blue Cross. *See City of Philadelphia*, 889 A.2d at 668. In both submissions, the petitioners

argued that they were entitled to an administrative hearing pursuant to the Health Plan Corporations Act, *see* 40 Pa.C.S. § 6124(b), in which they could conduct discovery as well as cross-examine adverse witnesses and Blue Cross officials. The court held that, under Pennsylvania law, the petitioners had no protected property interest in their rates; therefore, they had no right to a due process hearing or standing to appeal the findings made by the Commissioner regarding the surplus held by each of the plans. *See City of Philadelphia,* 889 A.2d at 672.[1]

On May 25, 2005, Appellants filed a class action complaint in the Commonwealth Court's original jurisdiction. In their complaint, Appellants asserted causes of action grounded on breach of contract and unjust enrichment theories. Specifically, Appellants contended that the Commissioner did not fully approve Highmark's and NEPA's applications for approval of their 2003 surplus levels, as it found that both companies were operating with a "sufficient" level of surplus. Relying upon the Commissioner's order, Appellants alleged that Highmark and NEPA should not have included a risk and contingency factor in their filed premium rates for 2004. Arguing that the Commissioner's February 9, 2005 determination and order were incorporated into the contracts between Appellants and these companies, Appellants asserted that Highmark and NEPA were in breach of contract for failing to refund moneys received for any risk and contingency factor in their filed premium rates for 2004. In addition, Appellants contended that the companies had no right to keep any funds that they received relating to the inclusion of this factor. As Highmark and NEPA retained all funds that they received, Appellants concluded that the companies were unjustly enriched at their expense. As a remedy, Appellants sought a refund relative to the risk and contingency factor in the premium rates for 2004.

1. Several petitioners also unsuccessfully attempted to pursue a class action in the Insurance Department. *See Petty v. Insurance Dep't,* 878 A.2d 942 (Pa.Cmwlth.2005). They subsequently filed petitions for allowance of appeal at 698–701 MAL 2005, which were denied by this Court in 2005.

Highmark and NEPA filed preliminary objections, in which each of them asserted a lack of subject matter jurisdiction and failure to exhaust a statutory remedy. In addition to those objections, Highmark filed a motion alleging that Appellants lacked standing and NEPA requested counsel fees and costs as to all named Appellants other than Old Forge School District for vexatious conduct in commencing the action. *See* 42 Pa.C.S. § 2503(9) (providing that a party is entitled to an award of counsel fees when "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith"). Unlike NEPA, Highmark did not request attorneys' fees at that time.

The Commonwealth Court held a hearing on September 15, 2005 concerning Highmark's and NEPA's preliminary objections.[2] In a memorandum opinion issued on February 7, 2006, the court sustained the objections and dismissed Appellants' complaint. *See Old Forge Sch. Dist. v. Highmark,* 276 M.D. 2005, *slip op.* (Pa.Cmwlth.Feb. 7, 2006). The court determined that Appellants, while couching their argument in terms of excess surplus, were actually challenging the Commissioner's determination that retroactive rate relief is inappropriate. The court indicated that the proper procedure for contesting the Commissioner's determination was to appeal the decision pursuant to the Commonwealth Court's appellate jurisdiction. The court noted that Appellants had previously filed such an appeal, *see City of Philadelphia,* 889 A.2d 664, in which it had held that Appellants did not have a protected property interest in their rates and, therefore, did not have standing to appeal the findings made by the Insurance Commissioner. *See id.* at 672.[3] Connecting Appellants' lack of standing in that case to a lack of standing in the present one, the court stated the following: "[I]f [Appellants] lack standing to assert their challenge in the proceeding where it would properly be heard, their standing is not enhanced by bringing it in a

**2.** While it is evident from the record that the court held a hearing concerning these preliminary objections, it is unclear as to whether there was any argument regarding NEPA's motion for attorney's fees.

**3.** Appellants did not seek this Court's review of the *City of Philadelphia* decision.

procedurally improper venue." *Old Forge Sch. Dist.*, 276 M.D.2005, *slip op.* at 10. The court further reasoned that even if Appellants had standing, and if the court treated this action as being filed in its appellate jurisdiction as an appeal of the Commissioner's determination, the court would still have sustained the preliminary objections on the basis that Appellants' complaint was untimely, as it was not filed within thirty days from the date of the Commissioner's order. Finally, the court granted NEPA's motion for counsel fees, reasoning that Appellants had engaged in "obdurate and vexatious litigation":

> This is now at least the third time that most of the [Appellants] herein have had to be reminded of the basic premise that rates and reserves are part of a regulatory process under the sound discretion of the Commissioner, and are not the proper subject of adversary litigation in which individual entities or groups may assert their private interests. At this point, we believe that imposition of counsel fees for obdurate and vexatious litigation is appropriate.

*Id.* at 11.

NEPA and Appellants subsequently reached an agreement in which Appellants promised not to appeal as to NEPA and NEPA agreed not to seek fees and costs from Appellants. *See* Brief for Appellants at 6. Following the Commonwealth Court's dismissal of Appellants' complaint, Highmark, on February 17, 2006, filed an application for attorney's fees under Sections 2503(7) and 2503(9) of the Judicial Code, 42 Pa.C.S. §§ 2503(7), (9), as to all named Appellants with the exception of Old Forge School District.[4] Specifically, Highmark re-

---

4. Section 2503 of the Judicial Code, provides, in relevant part:

 The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

 . . .

 (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

 . . .

 (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

 42 Pa.C.S. §§ 2503(7), (9).

quested that the court enter an award for attorneys' fees for the same reasons as it granted NEPA's motion for fees in its February 7, 2006 memorandum and order. Several weeks later, on March 9, 2006, Appellants appealed the court's order dismissing their complaint.[5] Finally, on March 21, 2006, the Commonwealth Court entered an order granting Highmark's application for fees, incorporating the reasoning from its February 7, 2006 memorandum opinion and order.[6]

Appellants appealed to this Court, raising two issues. First, Appellants contend that the Commonwealth Court erred in granting Highmark's application for attorneys' fees. Second, Appellants maintain that the Commonwealth Court erred in finding Robert Petty and R.G. Petty Masonry (collectively the "Petty Appellants") "jointly and severally" liable for attorneys' fees and expenses incurred by Highmark where (i) the Petty Appellants were not parties to the underlying Insurance Department proceeding against Highmark; (ii) the Petty Appellants were not parties to the Commonwealth Court appeal, as it pertained to Highmark; and (iii) the Petty Appellants have never asserted legal claims against or sought relief from Highmark in any judicial or administrative proceeding.

## I.

### A. *Jurisdiction*

As a threshold matter, Appellants argue that the Commonwealth Court did not have jurisdiction to award counsel fees to Highmark because Appellants' appeal of the court's February 7, 2006 order divested the court of jurisdiction to entertain such a request. In this regard, Appellants observe that under Pennsylvania Rule of Appellate Procedure 1701(a), a lower court has no jurisdiction to proceed further on a

5. This Court affirmed the court's dismissal of Appellants' complaint in a *per curiam* order. *See Old Forge Sch. Dist. v. Highmark,* 590 Pa. 98, 912 A.2d 206 (2006).

6. While the Commonwealth Court's memorandum opinion referred to both "vexatious" and "obdurate" conduct, the court's accompanying order only referred to "vexatious" conduct.

matter once an appeal is taken.[7] Appellants further note that Rule 1701(b)(1) provides limited exceptions for trial court activities such as correcting formal errors in papers relating to the matter, causing the record to be transcribed, granting leave to appeal in *forma pauperis,* and taking any other action "otherwise ancillary to the appeal or petition for review proceeding." *See* Pa.R.A.P. 1701(b); *accord* G. RONALD DARLINGTON ET. AL., 20A PENNSYLVANIA APPELLATE PRACTICE § 1701:2 (West 2006) (describing the exceptions in Rule 1701(b) as "house-keeping" functions).

In addition, Appellants rely upon *In re Appeal of Affected and Aggrieved Residents from the Adverse Action of the Supervisors of Whitpain Township,* 325 Pa.Super. 8, 472 A.2d 619 (1984), in which the Superior Court determined that the trial court did not have jurisdiction to entertain a motion for attorneys' fees under Section 2503(9) once an appeal of the underlying action had been taken. The court observed that the issue involved in the motion for attorneys' fees, namely, vexatious conduct, was not related to the subject of the underlying action, which concerned whether an appeal of a zoning board decision was frivolous and for the purpose of delay. Thus, the court held that the trial court did not have jurisdiction to entertain the petition for counsel fees. *See id.* at 14, 472 A.2d at 622. By analogy, Appellants argue that the issues involved in the underlying appeal are unrelated to Highmark's application for attorneys' fees. Appellants thus conclude that the Commonwealth Court did not have jurisdiction to rule on Highmark's application.

By contrast, Highmark argues that the court's award of attorneys' fees to Highmark was "ancillary" to its award of attorneys' fees to NEPA and was, therefore, proper under Rule 1701(b)(1). *See* Pa.R.A.P. 1701(b)(1). Highmark observes that the grounds for its fee application were set forth in the Commonwealth Court's February order, which was the

7. Pennsylvania Rule of Appellate Procedure 1701(a) indicates as follows: "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a).

subject of Appellants' appeal to this Court. As such, High-mark asserts that a ruling on its fee application by the court was, in essence, an order expanding the fee award in February 2006 to include Highmark. Further, Highmark contends that the court's decision to rule on its application was permissible as an act designed to "clean up" a matter ancillary to the appeal. *See Rosenberg v. Holy Redeemer Hosp.*, 351 Pa.Super. 399, 410, 506 A.2d 408, 414 (1986) (holding that the trial court properly exercised its jurisdiction in its denial of several outstanding motions because the court was clearing up matters ancillary to the appeal). Highmark maintains that it appropriately waited until after the Commonwealth Court issued its February opinion before filing its application for fees. *See* Brief for Appellee (citing 25A EDWARD K. ESPING, ET AL., STANDARD PENNSYLVANIA PRACTICE 2d § 127:53 (West 2006)) (stating that a "claim for attorney's fees, such as one based on the arbitrary, vexatious, or bad-faith conduct of another party, . . . should be raised at the conclusion of the underlying action, using the record and history of the action to support the claim").

While both Appellants and Highmark focus their arguments on whether a motion for attorneys' fees should be encompassed among the exceptions listed in Rule 1701(b), we conclude that the relevant inquiry is whether a motion for fees constitutes a separate "matter" for purposes of Rule 1701(a). *See* Pa.R.A.P. 1701(a) (providing that, "the trial court . . . may no longer proceed further in the *matter* " once an appeal has been taken (emphasis added)). In the present case, the Commonwealth Court issued an order sustaining Highmark preliminary objections and dismissing Appellants' complaint. This decision constituted a final order subject to appeal. *See Gasbarini's Estate v. Med. Center of Beaver County, Inc.*, 487 Pa. 266, 270, 409 A.2d 343, 345 (1979) (observing that, "[a]s a general rule, where preliminary objections are sustained and a complaint is dismissed, the order sustaining the preliminary objections and dismissing the complaint is final and appealable"). Appellants appealed the court's order, thus triggering Rule 1701(a). As a result of the appeal, the Commonwealth

Court could proceed no further concerning its order dismissing Appellants' complaint.

Prior to Appellants' appeal, Highmark filed a timely motion for attorneys' fees. We view Highmark's motion for attorneys' fees as a separate "matter" from the court's order dismissing Appellants' complaint. As such, the Commonwealth Court was not precluded from deciding Highmark's motion under Rule 1701(a). Treatment of Highmark's motion for attorneys' fees as a separate matter is supported by this Court's recent decision in *Miller Electric Company v. DeWeese*, 589 Pa. 167, 907 A.2d 1051 (2006). In *Miller Electric*, this Court concluded that a garnishee that was denied its entitlement to attorney's fees under Section 2503(3) could appeal within thirty days of the date of denial, regardless of when the final judgment was entered in the underlying matter. *See Miller Electric*, 589 Pa. at 176, 907 A.2d at 1057. The Court reasoned that a motion for attorney's fees under Section 2503 is connected to, but separate from, the underlying action. In this regard, the motion for attorney's fees was not disposed of when final judgment was entered in the underlying matter. *See id.*, 907 A.2d at 1057. Applying the reasoning of *Miller Electric* to the present case, Highmark's motion for attorneys' fees constitutes a separate matter that was properly addressed by the Commonwealth Court while the underlying matter was on appeal.

### B. *"Vexatious" Conduct under Section 2503(9)*

Turning to Appellants' argument that the Commonwealth Court abused its discretion by determining that Appellants' conduct was "vexatious," Appellants first assert that the court failed to cite any statutory provision or case law in support of its decision. Moreover, they observe that the court's analysis of this issue is merely one paragraph, which contains no discussion of the record. Noting that Highmark moved for fees under both Sections 2503(7) and 2503(9), Appellants maintain that Section 2503(7) is not relevant here because Highmark has not asserted that Appellants engaged in "dilatory, obdurate or vexatious conduct during the pendency of a

matter." *See* 42 Pa.C.S. § 2503(7). In this regard, Appellants observe that this case was dismissed on preliminary objections. Instead, Appellants argue that only Section 2503(9), which applies to a party's decision to commence an action, is at issue here, but maintain that their conduct did not violate this provision.

In order to find that a lawsuit's initiation was "vexatious," Appellants note that two separate findings must be made: 1) the suit was filed without sufficient ground in either law or in fact; and 2) the suit served the sole purpose of causing annoyance. *See* Brief for Appellants at 14 (citing *Thunberg v. Strause,* 545 Pa. 607, 615, 682 A.2d 295, 299 (1996)). Concerning the first prong, Appellants assert that they advanced a legitimate legal theory in which they sought to challenge Highmark's inclusion of a risk and contingency factor in its 2004 filed rates on the basis of the Commissioner's February 9, 2005 determination. Appellants also challenge the Commonwealth Court's decision to grant fees based upon previous suits filed by Appellant against Highmark. Instead, Appellants suggest that all of their actions were good faith efforts to enforce obligations created under Pennsylvania law and/or by the Pennsylvania Insurance Department. Appellants note that the "basic premise" referred to by the court, namely, that "rates and reserves are part of a regulatory process under the sound discretion of the Commissioner, and are not the proper subject of adversary litigation," was, at the time, being considered by this Court in our review of the Commonwealth Court decision in *Ciamaichelo v. Independence Blue Cross,* 814 A.2d 800 (Pa.Cmwlth.2002).

Moreover, Appellants assert that each of the suits they brought against the Blue Plans was separate and distinct. In the first action, *Ciamaichelo,* Appellants sought to remedy, *inter alia,* Highmark's alleged violation of Pennsylvania's Non–Profit Law, as well as Highmark's claimed breach of contract and breach of fiduciary duty. In the second action, *Petty,* Appellants explain that they brought similar claims in the Pennsylvania Insurance Department on their belief that the Department was the appropriate forum for such com-

plaints. In a third action, *City of Philadelphia,* Appellants filed a petition for review in the Commonwealth Court asserting that the Insurance Commissioner's February 9, 2005 Determination and Order was based upon a constitutionally infirm process. Finally, in a fourth action, *Old Forge School District,* Appellants brought suit in the Commonwealth Court's original jurisdiction challenging Highmark's inclusion of a risk and contingency factor in its 2004 filed rates on the basis of a portion of the Commissioner's February 9, 2005 Determination and Order.

As to *Thunberg's* second consideration, Appellants argue that Highmark has not alleged, and the court has not made any findings, that their suits served the sole purpose of causing annoyance. Instead, Appellants maintain that their actions sparked public interest and prompted the Insurance Department to become more involved in reviewing and regulating the surplus levels maintained by the Blue Plans. Specifically, Appellants suggest that their actions brought about the Commissioner's decision, in September 2002, to hold hearings concerning the Blue Plans' reserve and surplus levels. In connection with these hearings, Appellants note that Pennsylvania State Representative Phyllis Mundy highlighted the impact of Appellants' suits in generating public interest in a letter addressed to the Insurance Commissioner:

> [T]here is a substantial public interest in this issue, which has been brought to the public's attention through a series of class action lawsuits brought by policyholders and subscribers of the respective Pennsylvania Blue Plans in the Courts of Common Pleas of Lackawanna, Bucks and York Counties.

*See* Letter of Hon. Phyllis Mundy to M. Diane Koken, dated August 23, 2002, *available at* http://www.insurance.state.pa.us/bchearing/comments/bc_ind_0017.pdf. In addition, Appellants assert that their actions were instrumental in triggering a dialogue that led to an unprecedented "Agreement on Community Health Reinvestment" between the Pennsylvania Blue Plans and the Insurance Department, which required the Blue Plans to commit a certain percentage of the their income

received from health premiums and in connection with Medicare and Medicaid premiums to fund social programs. *See* Agreement on Community Health Reinvestment, dated February 2, 2005, 35 Pa. Bull. 4155 (July 23, 2005).[8]

Highmark, by contrast, argues that the Commonwealth Court did not abuse its discretion in granting its fee application because Appellants are "serial litigators" who have ignored the court's previous rulings. *See* Brief for Appellees at 17. Highmark asserts that all of Appellants' suits have a "single alleged goal," namely, "to force the Blue Plans to disgorge allegedly excessive reserves and surplus derived from allegedly excessive rates." *See* Brief for Appellee at 9. Highmark notes that the previous rulings by the Commonwealth Court reflect the current state of the law on the right of private litigants to police and enforce the insurance laws of this Commonwealth. Highmark further contends that the Commonwealth Court's order, in the present matter, was supported by the record.

 As the Commonwealth Court appears to have based its decision on the various actions filed by Appellants, our decision here is to remand this issue for that court to reevaluate its decision in light of this Court's recent decision in *Ciamaichelo v. Independence Blue Cross*, 589 Pa. 415, 909 A.2d 1211 (2006). In *Ciamaichelo*, this Court held that a complaint containing, *inter alia*, allegations that Independence Blue Cross, a Pennsylvania Blue Plan, breached its contractual and fiduciary duties to its policyholders in having amassed an excess in surplus funds, could proceed in the court of common pleas. Mr. Chief Justice Cappy, writing for a majority of the Court, reasoned that the Legislature has empowered the court of common pleas, not the Insurance Department, to adjudicate such claims. *See Ciamaichelo*, 589 Pa. at 425, 909 A.2d at 1217. Thus, the "basic premise" referred to by the Commonwealth Court, namely, that challenges to rates and reserves are entirely within the sound discretion of the Commissioner

8. We note that our disposition in the present matter does not depend upon Appellants' arguments concerning the impact of their lawsuits, as these assertions are not contained in the certified record on appeal.

and are not the proper subject of adversary litigation, has been undermined by this Court's holding in *Ciamaichelo*. Accordingly, we believe that a remand in light of *Ciamaichelo* is warranted.

In addition, the Commonwealth Court's decision is problematic because the court did not articulate its reasoning according to the two-prong test for vexatious conduct set forth in *Thunberg*. Specifically, the court made no findings as to the second prong of *Thunberg*, namely, whether "the suit served the sole purpose of causing annoyance." *See Thunberg*, 682 A.2d at 299.

## II. *The Petty Appellants*

Appellants next argue that the Commonwealth Court erred in finding Robert Petty and R.G. Petty Masonry (collectively the "Petty Appellants") "jointly and severally" liable for attorneys' fees and expenses incurred by Highmark. Appellants contend that the Petty Appellants should not be included in the court's fee award because their class action complaint makes clear that, as subscribers and policyholders of NEPA, they did not assert any claims against Highmark. Instead, the Petty Appellants only sought relief from NEPA and the Insurance Commissioner. In this regard, Appellants observe that their complaint defined two discrete subclasses of plaintiffs:

(a) the class of all policyholders and subscribers of Defendant Highmark improperly charged a risk and contingency factor in their filed premium rates for 2004 or any other year. Excluded from the classes are [Highmark], its affiliates, subsidiaries and predecessors in interest, and all officers or employees of any such entity; and

(b) the class of all policyholders and subscribers of Defendant NEPA charged a risk and contingency factor in their filed premium rates for 2004 or any other year. Excluded from the class are [NEPA], its affiliates, subsidiaries and predecessors in interest, and all officers of employees of any such entity.

Class Action Complaint at ¶ 41. Further, in their complaint, Appellants assert that Appellant R.G. Petty "contracts with [Appellee] NEPA to provide health insurance coverage for its employees." *Id.* at ¶ 11. Lastly, Appellants maintain that Appellant Robert Petty, the sole proprietor of R.G. Petty, is insured by NEPA as a subscriber to R.G. Petty's group policy. *See id.* at ¶ 12. Thus, Appellants argue that the Petty Appellants cannot be liable for fees incurred by Highmark. Moreover, Appellants argue that to require the Petty Appellants to pay attorneys' fees to Highmark does not further the purpose of counsel fees, which is to deter the filing of frivolous and otherwise improper lawsuits, because the Petty Appellants did not file any suit against Highmark in the first instance. *See* Brief for Appellants at 25 (citing *Thunberg v. Strause,* 545 Pa. at 616, 682 A.2d at 300 (observing that "[t]he Judicial Code permits the award of attorneys' fees in an attempt to curb the filing of frivolous and otherwise improperly brought lawsuits")).[9]

Highmark argues that the Petty Appellants were properly included in the court's fee award. While the Petty Appellants did not file any direct claims against Highmark, Highmark contends that they are part of the "plaintiff group" that has filed serial actions against the Blue Plans despite the Commonwealth Court's previous decisions, which have held that such lawsuits are improper. In this regard, Highmark maintains that the Petty Appellants are not newcomers to these proceedings and should be held accountable for the filing of the lawsuit as the other Appellants.

It would be premature for this Court to consider the issue of whether Highmark is entitled to attorneys' fees against the Petty Appellants absent factual findings by the Commonwealth Court pursuant to Sections 2503(7) and 2503(9).

9. Appellants note that Appellant Old Forge School District had not participated in any litigation against Highmark prior to the action underlying this appeal. They surmise that this was the reason why the Commonwealth Court did not include them in its award of attorneys' fees. *See* Brief for Appellants at 24 n. 7.

### III. *Conclusion*

The Commonwealth Court's order is vacated and the matter is remanded to that court for reevaluation of its decision in light of the reasoning set forth in this opinion. Jurisdiction is relinquished.

Justice BAER files a concurring opinion.

Justice BAER, concurring.

Although I dissented in our recent decision of *Miller v. DeWeese,* 589 Pa. 167, 907 A.2d 1051 (2006) (Baer, J. dissenting), a fractured decision of our Court with only five participating justices, I join the Majority opinion in full based on *stare decisis.* While I am bound to follow this Court's prior precedent, I continue to believe that piecemeal litigation is not good public policy and should be disfavored.