J-A11019-22

2023 PA Super 143

| | | |
|---|---|---|
| WILLIAM SCHLUTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRISHAVTAR, INC.  AND BAKRUSHNA PANCHAL | : | |
| | : | |
| | : | No. 2088 EDA 2021 |
| Appellants | : | |

Appeal from the Order Entered September 7, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  170602871

| | | |
|---|---|---|
| WILLIAM SCHLUTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRISHAVTAR, INC.  AND BAKRUSHNA PANCHAL | : | |
| | : | |
| | : | No. 2089 EDA 2021 |
| Appellants | : | |

Appeal from the Order Entered September 7, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  170603382

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

CONCURRING OPINION BY BOWES, J.:          **FILED JULY 31, 2023**

I agree with the Majority that the trial court lacked jurisdiction to dispose

of Appellant's petitions to mark judgments satisfied pursuant to 42 Pa.C.S.

§ 8103 while the mortgage foreclosure judgment was on appeal.  ***See*** Majority

Opinion at 12-15, 21-22.  I further agree with the Majority that the trial court

erred to the extent that it purported to calculate a "deficiency judgment" on

remand following the First Appeal, as there is no record evidence that the September 2020 sale price of $600,000 was the fair market value of the property. **See** Majority Opinion at 23-25. I write separately to offer a more direct analysis of one issue and to expound upon another.

First, Rule 1701(a) of our Rules of Appellate Procedure provides that, generally speaking, "after an appeal is taken . . . , the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a). Our Supreme Court has held that whether Rule 1701(a) precludes a trial court from taking a particular action while an appeal is pending turns on whether that action is part of the same "matter" on appeal or "connected to, but separate from, the underlying action." **Old Forge Sch. Dist. v. Highmark, Inc.**, 924 A.2d 1205, 1211 (Pa. 2007) (holding request for attorney fees was a separate matter such that Rule 1701(a) did not deprive the trial court of jurisdiction to rule upon it). **See also Rosenberg v. Holy Redeemer Hosp.**, 506 A.2d 408, 414 (Pa.Super. 1986) (observing that the trial court had jurisdiction to act upon "supplementary motions" for contempt and for a lift of a discovery stay "inasmuch as it was clearing up matters ancillary to the appeal").

Although the Deficiency Judgment Act ("DJA") refers to petitions filed by creditors and debtors alike as "supplementary proceedings,"[1] as the Majority properly *sua sponte* observes, this Court has held that Rule 1701(a) deprives a trial court of jurisdiction to mark a judgment satisfied where, as in the case *sub judice*, the validity and amount of judgment that would be so marked was at issue on appeal. ***See***, ***e.g.***, ***Leasing Serv. Corp. v. Benson***, 464 A.2d 402, 410 (Pa.Super. 1983). In other words, to the extent that Appellants' § 8103(d) petitions, if meritorious, required the court to discharge a judgment of uncertain validity and amount, they were not "supplementary" for purposes of Rule 1701(a). Consequently, the trial court lacked jurisdiction to entertain them.

Second, the Majority indicates that "[o]ur decision today does no more than to conclude that the trial court did not possess jurisdiction to consider the [§] 8103(d) petitions." Majority Opinion at 25. However, the Majority also goes on to submit that the six-month clock for Schluth to file a DJA petition to fix fair market value will only begin to run once jurisdiction over these cases is returned to the trial court, opining that:

> [t]he return of these cases to the trial court when it again regains jurisdiction may be the first time in these lengthy proceedings

---

[1] **See** 42 Pa.C.S. §§ 8103(a) (providing that a petition to fix fair market value in order to seek the balance due on a judgment following execution proceedings "shall be filed as a supplementary proceeding in the matter in which the judgment was entered"); 8103(d) (indicating that a petition to have a judgment marked satisfied, released, and discharged is to be filed "as a supplementary proceeding in the matter in which the judgment was entered").

when the trial court may be able to consider a deficiency judgment petition to fix the fair market value of the property sold and to arrive at a deficiency judgment.

*Id*. at 25-26.

I deem it appropriate to delve into this pronouncement further. In particular, I believe we should examine whether Appellants or Schluth were, respectively, able or required to invoke the DJA while the foreclosure judgment was pending on appeal. I begin by examining plain language of the DJA statute. As indicated above, the DJA's general rule is as follows:

Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and **the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs** and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold.

42 Pa.C.S. § 8103(a) (emphasis added).

When execution proceedings do not occur until the judgment is final, *i.e.*, when appellate review is no longer available, it is immediately apparent whether the sheriff's sale yielded sufficient funds to satisfy the judgment. In such instances, as the Majority observes, the six-month period for initiating DJA proceedings commences when the deed is delivered. **See** Majority Opinion at 11 n.10 (citing, *inter alia*, 42 Pa.C.S. § 5522(b)(2) (providing a six-month statute of limitations for commencing "[a] petition for the establishment of a deficiency judgment following execution and delivery of the sheriff's deed for the property sold in connection with the execution

proceedings referenced in the provisions of section 8103(a) (relating to deficiency judgments)").

However, the trial court here expressly gave Schluth the green light to commence execution proceedings immediately, denied Appellants' motion to stay pending appeal, and the sale took place before this Court vacated part of the already-executed judgment. The trial court then undertook the findings directed by this Court (and then some), and Appellants filed a new appeal, again postponing the finality of the judgment. Consequently, the underlying judgment did not become final until after our Supreme Court denied Appellant's request for discretionary review of our decision in the Second Appeal. *See Schluth v. Krishavtar, Inc.*, 276 A.3d 224 (Pa.Super. 2022) (non-precedential decision), *appeal denied*, 285 A.3d 596 (Pa. 2022).

This Court observed that § 5522(b)(2)'s six-month statute of limitations for commencing deficiency proceedings following a sheriff's sale and the delivery of the deed is tolled while the parties litigate the finality of the underlying judgment. *See Holzapfel v. Mahony*, 532 A.2d 469, 472 n.2 (Pa.Super. 1987). This is palpably cogent, for whether a sheriff's sale price was insufficient to satisfy the underlying judgment is inscrutable until the value of that judgment is settled.

Thus, Appellant's August 2021 petitions, filed long before the judgment became final in September 2022, were plainly premature. The commencement of the § 5522(b)(2) statute of limitations and the triggering

event for § 8103(d)—the failure of Schluth to file a petition to fix market value within six months of it being established that the sale of the property did not satisfy the final judgment—had not yet occurred. In other words, Schluth's failure to initiate DJA proceedings in the Mortgage Foreclosure action within six months of the delivery of the deed was not, as he argues and the Majority properly rejects, excused because the trial court entered a stay order in the Breach of Contract action. *See* Majority Opinion at 22-23. Rather, Schluth's duty to initiate deficiency judgment proceedings was tolled during the pendency of the First and Second appeals by operation of law.

It seems to me that the six-month window for Schluth to file his DJA petition would have closed in April of 2023 had Appellants not filed their § 8103(d) petitions and the instant appeal from their denials. However, by initiating the premature supplementary DJA proceedings and appealing the disposition, Appellants extended Schluth's window of opportunity by triggering Rule 1701(a)'s deprivation of the trial court's jurisdiction to adjudicate the parties' DJA rights. For these reasons, I agree with the Majority that the six-month statute of limitations for Schluth to seek a deficiency judgment pursuant to § 8103 does not commence until after these cases are remanded to the trial court.

In sum, while I discern no error in the Majority's analysis and conclusions, I deem it appropriate to offer the above plainly-stated basis for joining in the Majority's disposition.

Judge Stabile joins this Concurring Opinion.