909 A.2d 1211

**Jules CIAMAICHELO and Rob Stevens, Inc., Appellants,**

**v.**

**INDEPENDENCE BLUE CROSS, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 2004.

Decided Nov. 21, 2006.

William E. Hoese, Esq., Denis Francis Sheils, Esq., Jerome M. Marcus, Esq., Gregg W. Mackuse, Esq., David Michael Laigaie, Esq., Jonathan Auerbach, Esq., Michael C. Dell'Angelo, Esq., Gregory P. Miller, Esq., William R. Caroselli, Esq., H. Laddie Montague, Esq., Edward H. Rubenstone, Esq., Joseph C. Kohn, Esq., Philadelphia, for Jules Ciamaichelo and Rob Stevens, Inc.

Melissa J. Lopes, *pro hac vice*, Dawn M. Touzin, *pro hac vice*, for amicus curiae Community Catalyst.

Brendan Patrick Lynch, Esq., Jonathan M. Stein, Esq., Richard P. Weishaupt, Esq., Michael J. Campbell, Esq., for amicus curiae Philadelphia Citizens for Children & Youth, et al.

Coleen Mary Meehan, Esq., Joseph J. McAlee, Esq., Joseph R. Podraza, Esq., Maureen Murphy McBride, Esq., Robert J. Donaghy, Esq., Geoffrey R. Johnson, Esq., William H. Lamb, Esq., Richard A. Sprague, Esq., Jay H. Calvert, Esq., James C. Sargent, Esq., Philadelphia, for Independence Blue Cross.

Paul Kevin Brobson, Esq., Jack Mentzer Stover, Esq., for amicus curiae Highmark Inc.

Steven Jeffrey Fram, Esq., for amicus curiae Capital Blue Cross.

Terrance A. Keating, Esq., Jodi A. Beierschmitt, Esq., for amicus curiae M. Diane Koken, PA Ins. Commissioner & The PA Ins. Dept.

Aaron Richard Krauss, Esq., Patricia Sons Biswanger, Esq., John P. Moses, Esq., Patrick J. O'Connor, Esq., Gaele M.

Barthold, Esq., Philadelphia, for amicus curiae Hospital Service Assoc. of NE PA d/b/a Blue Cross of NE PA.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Chief Justice CAPPY.*

Appellants Jules Ciamaichelo and Rob Stevens, Inc. commenced a class action against Appellee Independence Blue Cross ("IBC") in the Court of Common Pleas of Bucks County on behalf of themselves and other IBC subscribers, policyholders and members. In their Class Action Complaint ("Complaint"), Appellants alleged that IBC violated the Nonprofit Corporation Law of 1988 ("Non–Profit Law"), 15 Pa.C.S. § 5101 *et seq.,* and breached contractual and fiduciary duties in having amassed an excess in surplus funds for purposes inconsistent with its non-profit status. We granted review to consider whether the Commonwealth Court correctly determined that the Complaint could not proceed in the court of common pleas due to a lack of subject matter jurisdiction and the filed-rate doctrine. For the following reasons, we conclude that the Commonwealth Court erred. Accordingly, the order of the Commonwealth Court is reversed, and this case is remanded to the Commonwealth Court for further proceedings.

Appellants commenced this action on August 21, 2001. Appellants' Complaint alleges in relevant part that: IBC is a non-profit hospital corporation governed by the Non–Profit Law and has a corporate mandate to be a health care insurer of last resort; that IBC "accumulated excess funds (called 'surplus' or 'reserves and unassigned funds') of at least $349 million and perhaps as much as $438 million"; that "surplus is the amount that remains when an insurer subtracts its liabilities from its assets" and constitutes funds "not necessary for the ongoing operations of an insurer but rather constitutes

---

* This matter was reassigned to this author.

funds available for unforeseen circumstances or contingencies;"[1] that IBC amassed the excess surplus over time by increasing the total amount of surplus and the amount designated as surplus as a percentage of the claims and expenses incurred in any given year; that the surplus IBC accumulated was excessive because the amount was not needed for IBC's ongoing operations or financial solvency; and that IBC dedicated the excess surplus to purposes inconsistent with its nonprofit status and corporate mandate, including, possible acquisitions, mergers, conversions, benefits to officers and directors, and investments in for-profit subsidiaries. (Class Action Complaint ¶¶ 1, 27, 41)

In Count 1, the Complaint claims that IBC violated Section 5545 of the Non–Profit Law, 15 Pa.C.S. § 5545,[2] and that under Section 5551(c) of the same statute, 15 Pa.C.S. § 5551(c),[3] IBC's excess surplus should have been used to

1. We observe that in the insurance industry, the term "surplus" is used interchangeably with the term "reserves." Appellants' Complaint uses the term "surplus" to refer to funds that an insurer accumulates to cover future exigencies and is unassigned to any particular claim. It is not to be confused with funds that an insurer dedicates to covering claims that are incurred, but not paid. *See* 41 P.S. § 71.

2. Section 5545 of the Non–Profit Law states:

§ 5545. Income from corporate activities

A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation. As used in this section the terms fees or prices do not include rates of contribution, fees or dues levied under an insurance certificate issued by a fraternal benefit society, so long as the distribution of profits arising from said fees or prices is limited to the purposes set forth in this section and section 5551 (relating to dividends prohibited; compensation and certain payments authorized).

15 Pa.C.S. § 5545.

3. Section 5551(c) of the Non–Profit Law provides:

§ 5551. Dividends prohibited; compensation and certain payments authorized

* * *

(c) Certain payments authorized.—A nonprofit corporation may confer benefits upon members or nonmembers in conformity with its

subsidize coverage for the uninsured citizens of Pennsylvania, expand the coverage it provides or returned to its policyholders, subscribers and members. In Count II, the Complaint claims that the Non–Profit Law is incorporated into the parties' contract, as is a duty of good faith and fair dealing, and that IBC's actions breached the contract. In Count III, the Complaint claims that as a non-profit corporation, IBC stands in a fiduciary relationship with its subscribers, policyholders, and members, and that IBC's actions represent breaches of the fiduciary duties that IBC owes. In Count IV, the Complaint claims that under Sections 5508 and 5793(b) of the Non–Profit Law, 15 P.S. §§ 5508, 5793(b),[4] Appellants are

> purposes, may repay capital contributions, and may redeem its subvention certificates or evidences of indebtedness, as authorized by this article, except when the corporation is currently insolvent or would thereby be made insolvent or rendered unable to carry on its corporate purposes, or when the fair value of the assets of the corporation remaining after such conferring of benefits, payment or redemption would be insufficient to meet its liabilities. A nonprofit corporation may make distributions of cash or property to members upon dissolution or final liquidation as permitted by this article.
> 15 Pa.C.S. § 5551(c).

**4.** In relevant part, sections 5508 and 5793 state, respectively:
> § 5508. Corporate records; inspection by members
> * * *
> (b) Right of inspection by a member.—Every member shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the membership register, books and records of account, and records of the proceedings of the members, directors and any other body, and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to the interest of the person as a member....
> § 5793. Review of contested corporate action
> (a) General rule.—Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.
> (b) Powers and procedures.—The court may make such orders in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the corporation and other relevant evidence which may relate to the issue. The court shall provide for notice of the pendency of the proceedings under this section to all persons affected thereby. If it is determined that no valid corporate action has been taken, the court may order a meeting

entitled to inspect IBC's corporate books and records and that the books and records will reveal that IBC engaged in the improper activities the Complaint sets forth.

By way of relief, the Complaint requests that the court authorize the class action; declare that IBC violated the Non–Profit Law by accumulating the excess surplus and engaging in for-profit activities; order such relief under the Non–Profit Law as it may deem appropriate with regard to the disposition of the excess surplus and in general; award them reasonable attorneys' fees from the excess surplus; require that IBC specifically perform the requirements of the Non–Profit Law; order an accounting and impose a constructive trust over the excess surplus; and order that IBC produce documents that fall within thirteen categories.

On October 22, 2001, IBC filed preliminary objections to the Complaint. In one preliminary objection, IBC asserted that since Counts I, II, and III essentially challenge IBC's rates and reserves, the Counts must be dismissed for lack of subject matter jurisdiction because under the insurance statutes, such matters are committed to the exclusive jurisdiction of the Pennsylvania Department of Insurance ("Department"). In a second preliminary objection in the nature of a demurrer, IBC asserted that since Counts I, II, and III essentially challenge rates that were reviewed and approved as reasonable and nondiscriminatory by the Department, the Counts are barred under the filed-rate doctrine. *See Montana–Dakota Utilities Co. v. Northwestern Public Service Co.,* 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (holding that the right to a reasonable utility rate is the right to the rate that the Federal Power Commission files or fixes, and that, except for review of the Commission's orders, the courts can assume no right to a different rate on the ground that it is the only or the more reasonable one). In a third preliminary objection, IBC asserted that Counts I and IV must be dismissed because Appellants are not among the persons upon whom the Non–Profit

to be held in accordance with section 5792 (relating to proceedings prior to corporate action).
15 Pa.C.S. §§ 5508(b); 5793(a)-(b).

Law confers standing or allows to inspect corporate records; that Appellants failed to allege the type of "corporate action" that gives them a cognizable basis for invoking the statute; and that the Non–Profit Law does not otherwise provide Appellants with a right of action or a right to relief.[5]

By order dated June 13, 2001, the trial court overruled IBC's preliminary objections. The trial court's decision was premised on the principle that preliminary objections should be sustained and a complaint dismissed only in cases that are clear and free from doubt. *See, e.g., Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 259 A.2d 443, 449 (1969). On July 1, 2002, IBC moved for reconsideration of the trial court's June 13, 2001 order or alternatively, to vacate the order. On July 15, 2002, IBC filed an Application to Amend Interlocutory Order to Include Statement Specified in 42 Pa.C.S. § 702(b) and for a Stay of all Proceedings. On July 19, 2002, the trial court entered an order denying IBC's Motions and Application.

On August 19, 2002, IBC filed a Petition for Review in the Commonwealth Court, seeking review of the trial court's denial of certification under 42 Pa.C.S. § 702(b) and leave to appeal the trial court's June 13, 2001 interlocutory order. *See* Pa.R.A.P. 1311, 1513. IBC presented three substantive issues for review in its Petition: (1) whether Appellants' Complaint must be dismissed for lack of subject matter jurisdiction because the Legislature has given the Department exclusive

---

5. In its Commonwealth Court appeal, IBC sought review of the trial court's denial of these particular preliminary objections. IBC raised additional preliminary objections, which were denied by the trial court, but not included in IBC's Commonwealth Court appeal. The additional preliminary objections IBC raised were: whether Counts I, II, and III should be dismissed for Appellants' failure to exhaust the administrative remedies available to them in the Department itself to contest IBC's rates or reserves; whether Counts I, II, and III should be dismissed under Pa.R.C.P. No. 1028(A)(5) for failure to join the Department, which is a necessary and an indispensable party; whether Count II should be dismissed because Appellants did not comply with Pa.R.C.P. No. 1028(A)(2) and attach a copy of the written agreement that IBC allegedly breached; and whether Counts II and III should be dismissed for failure to state a claim for breach of contract and breach of fiduciary duty, respectively.

jurisdiction over Appellants' claims; (2) whether the filed-rate doctrine bars Appellants' claims; and (3) whether Appellants lack standing and a right to relief under the Non–Profit Law. By order dated September 23, 2002, the Commonwealth Court granted IBC's Petition, and permitted the appeal.

On December 20, 2002, the Commonwealth Court *en banc* issued a published opinion and order. *Ciamaichelo v. Independence Blue Cross,* 814 A.2d 800 (Pa.Cmwlth.2002). On the question of jurisdiction, the Commonwealth Court agreed with IBC. Concluding that Appellants' claims were in actuality challenges to the level of IBC's rates and reserves and that Appellants did not request any relief that the court of common pleas was authorized to order, the court held that only the Department has the jurisdiction to resolve Appellants' claims. *Id.* at 802 (citing 40 P.S. §§ 71, 6123, 6124(a), 6125 and 31 Pa.Code §§ 84a.1–84a.8). Alternatively, the Commonwealth Court also agreed with IBC on application of the filed-rate doctrine. Describing the doctrine as a rule that preserves the exclusive role of a regulatory agency in approving rates, and focusing on the interaction between the rates an insurer charges and the reserves it accumulates, the court determined that the doctrine barred Appellants' claims because a decision from the trial court that IBC was holding excessive reserves would necessarily require a recalculation of rates that the Department had approved. 814 A.2d at 804–05. Accordingly, the Commonwealth Court reversed the trial court's order overruling IBC's preliminary objections and dismissed the Complaint.[6]

Appellants filed a Petition for Allowance of Appeal, which this Court granted. *Ciamaichelo v. Independence Blue Cross,* 574 Pa. 749, 829 A.2d 1158 (2003).[7]

---

**6.** Apparently, in light of its disposition of the first two issues IBC raised in its appeal, the Commonwealth Court did not address the third issue that IBC raised, namely, Appellants' standing and right to relief under the Non–Profit Law.

**7.** Our standard and scope of review is well-settled. In ruling on whether the preliminary objections IBC filed were properly sustained, we must determine whether it is clear and free from doubt from all the facts pleaded that Appellants will be unable to prove facts legally

As the central question raised in this appeal concerns what role, if any, the Legislature intends for the Department or the court of common pleas to play in resolving Appellants' claims, our analysis begins with the legislative grants of authority that each has been given. Under 40 P.S. § 41, the Department is charged with executing the insurance laws of the Commonwealth. Thus, under the Accident and Health Filing Reform Act, the Department is authorized to approve IBC's rates and to disapprove of and provide redress for rates that are inadequate, unfairly discriminatory or excessive; under the Health Plan Corporations Act, the Department is authorized to, *inter alia,* examine IBC's financial condition and approve its reserves; and under Article V–B of the Insurance Department Act of 1921, the Department is authorized to monitor and evaluate the adequacy of IBC's surplus as it relates to IBC financial solvency through application of a risk-based capital formula. 40 P.S. §§ 6124, 6125; 40 P.S. §§ 3803, 3808; 40 P.S. § 221.1–B *et seq.* At the same time, in the Non–Profit Law, the Legislature has granted the court of common pleas the power to hear and determine the validity of "corporate action" and to make such orders as may be just and proper, including the power to enforce document production and inspection in the Non–Profit Law; and in the Judicial Code, the "unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by law or usage in the courts of common pleas." 15 P.S. §§ 5508, 5791–5793; 42 Pa.C.S. § 931.

 Turning to the competing positions the parties presently set forth for our consideration in applying this legal framework, Appellants contend that the Commonwealth Court made two errors. First, the court mischaracterized the allegations

sufficient to establish jurisdiction or a right to relief. *See Hospital Healthsystem Ass'n of Pennsylvania v. Department of Public Welfare,* 585 Pa. 106, 888 A.2d 601, 607 (2005). This raises questions of law as to which our standard of review is *de novo. Id.*

On preliminary objections, all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purpose of review. *Employers Ins. of Wausau v. Com., Dept. of Transp.,* 581 Pa. 381, 865 A.2d 825, 830 n. 5 (2005).

in their Complaint as aimed at securing judicial regulation of IBC's rates and reserves, and second, failed to recognize that the Complaint makes claims under the Non–Profit Law and the common law, both of which are committed to the jurisdiction of the court of common pleas, for IBC's actions in having accumulated an excess in surplus for impermissible purposes. IBC counters that the Commonwealth Court correctly understood that: the injury about which Appellants actually complain is the payment of excessive premiums; that since the amounts an insurer holds in reserve is a function of the rates it charges, Appellants' challenge to an alleged excess in its surplus is necessarily a challenge to IBC's rates; that any review of assertions that IBC retained excessive funds does not come under the Non–Profit Law, but under statutes exclusively administered by the Department; and that Appellants' attempt to secure review of an approved rate in a court of law is precluded under the filed-rate doctrine.

We agree with Appellants. At his juncture in the proceedings, on preliminary objections, we do not conclude that it is clear and free from doubt that Appellants' Complaint amounts to nothing more than a request that the court of common pleas second-guess an approved rate, as IBC argues, or that the court assume the Department's regulation of IBC's reserves or risk-based capital. *See Hospital Healthsystem Ass'n of Pennsylvania,* 888 A.2d at 607. Rather, we view the Complaint as raising whether IBC violated the Non–Profit Law and committed breaches of contractual and fiduciary duties in amassing a fund designated as surplus that was in amount, over and above that necessary for IBC to operate properly, meet its legal obligations, or secure its financial solvency, and in dedicating that fund to certain purposes. These are claims that the Legislature has empowered the court of common pleas, not the Department, to adjudicate. *See* 15 P.S. §§ 5508, 5791–5793; 42 Pa.C.S. § 931.

In this regard, we find guidance in one of our recent decisions. In *Drain v. Covenant Insurance Company,* 551 Pa. 570, 712 A.2d 273 (1998), Covenant Life Insurance Company ("Covenant" or "Company") sought and received the Depart-

ment's required approval under 15 P.S. § 21205 and 40 P.S. § 991.1402(a)(1) to merge with Provident Mutual Life Insurance Company ("Provident"). Policyholders of Covenant filed a complaint against the Company, its directors and Provident, alleging a derivative claim for breach of fiduciary duties, waste of corporate assets and abuse of control, and a class action claim based on the alleged fundamental unfairness of the merger. Provident filed preliminary objections, asserting, *inter alia,* that since the complaint challenged the Department's approval of the merger and the Department's finding that the merger was fair, the complaint should be dismissed because the issues it raised were not for the court of common pleas to adjudicate, and had been already decided by the Department. The policyholders countered that since the claims sounded in tort, they were not within the Department's jurisdiction, but properly before the trial court. The trial court sustained Provident's preliminary objections; the Superior Court reversed. On appeal, this Court upheld the Superior Court. Upon reviewing the allegations and claims set forth in the complaint, we held that while the Complaint contained allegations about the fairness of the merger as well as the consideration that Provident paid for Covenant's surplus, when read as a whole, the claims asserted against Appellants were for torts in consummating the merger, and thus, belonged in the trial court. *Id.* at 277–78.

Likewise, even though the Complaint in this case refers to IBC's surplus, we conclude that Appellants' action was properly brought in the court of common pleas inasmuch as the claims asserted therein concern violations of the Non–Profit Law and breaches of common law duties, which are claims that the Legislature has committed to that court's jurisdiction. *See* 15 P.S. §§ 5508, 5791–5793; 42 Pa.C.S. § 931. Therefore, we hold that the Commonwealth Court erred in sustaining IBC's preliminary objections for lack of subject matter jurisdiction, and that Appellants' challenge to IBC should proceed in the way Appellants commenced it, as a civil action in the court of common pleas.

■ Further, our view of the Complaint leads us also to reject dismissal of the Complaint on the grounds that Appellants seek judicial review of an approved rate and the sweeping inference to be drawn from the Commonwealth Court's reasoning that allegations in a complaint that could lead to an adjustment of an insurer's approved rate invariably amount to a rate injury claim. As we discussed, the Complaint does not allege a rate injury claim. Therefore, we hold that the Commonwealth Court erred in sustaining IBC's preliminary objections in the nature of a demurrer to the Complaint under the filed-rate doctrine.[8]

■ It is our additional view that in this action, the doctrine of primary jurisdiction that this Court articulated in *Elkin v. Bell Telephone Company of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980), controls. As *Elkin* teaches, the doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *Id.* at 376. Primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the jurisdiction of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. *Id.*

In light of the Department's authority to oversee IBC's financial condition and approve or monitor many of IBC's operations, *see supra* p. 8, and the trial court's subject matter jurisdiction, *see id.*, we conclude that instead of placing this case in the exclusive domain of either the Department or that of the trial court, the proper course is to allow the trial court to refer to the Department any issue or matter that is revealed to lie within the Department's regulatory jurisdiction, including any remedial action should that become necessary, and is of sufficient complexity to require the Department's special competence. *See id.* at 377.

8. In light of our view of the Complaint, we do not address whether the filed-rate doctrine would have applied in this context.

Finally, as we noted, the Commonwealth Court did not address the third issue IBC raised on appeal, *i.e.*, whether the trial court erred in overruling IBC's preliminary objections that Counts I and IV in the Complaint should be dismissed because Appellants lack standing and do not state claims for relief under the Non–Profit Law. *See supra* pp. 5–6 and n. 6. In light of our present decision, this issue now requires resolution by the Commonwealth Court.

Therefore, for all of the foregoing reasons, the order of the Commonwealth Court is reversed, and this case is remanded to the Commonwealth Court with instructions to resolve the outstanding issue raised by IBC in its Petition for Review filed in the Commonwealth Court.

Justice CASTILLE, Justice NEWMAN and Justice SAYLOR and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

The majority frames the issues raised by the Complaint in a broad fashion, *see* Majority Slip Op., at 9, but in the end, these issues are resolved by determining whether IBC's surplus is excessive. Although appellants allege IBC violated the non-profit corporation law, breached its fiduciary duties, and breached its contract, these claims necessarily involve resolution of proper setting of rates and reserves. The setting of rates and reserves is within the Insurance Department and its Commissioner's province and expertise. 40 Pa.C.S. § 6124(a).

The practical question before this Court is who should make that determination, for both trial court and Insurance Department have authority to do so[1]. If both have the authority,

---

1. A person complaining of anything done or omitted to be done by a person subject to the jurisdiction of an agency, in violation of a statute or regulation administered or issued by the agency may file a complaint with the agency. If the complaint relates to a provision in a tariff, policy form or other similar contract document on file with the agency,

who has the expertise? If the doctrine of primary jurisdiction prevails, the trial court should refer the matter to the Insurance Department since the question of the appropriateness of IBC's reserve holdings is within its jurisdiction and is a complex matter within its expertise. If the Department found the holdings were not excessive, the trial court would have to dismiss the case, as no controversy would exist. On the other hand, if the Department found the holdings were excessive, the Department would have to determine the proper course of action for releasing the excess funds held. This would likewise leave nothing for the trial court to resolve, as appellants have asked for no compensatory damages, other than attorneys' fees and costs of litigation.

The appellants bypassed the Department's area of expertise by asking the courts to determine whether their insurance provider is holding excess reserves and surpluses[2]. In my judgment, IBC's reserve holdings should be challenged there, for the Insurance Department can provide complete redress of

the document should be identified. A copy of the complaint will be forwarded by the agency and to the respondent who will be called upon to satisfy the complaint or to answer the same in writing.... If, in the judgment of the agency, a violation of a statute or regulation administered or issued by the agency has been alleged and has not been satisfied adequately the agency will either invite the parties to an informal conference, set the matter for a formal hearing, or take another action which in the judgment of the agency is appropriate. In the event that a hearing is held the complainant automatically shall be a party thereto and need not file a petition for leave to intervene.
1 Pa.Code § 35.9.

**2.** Since the initiation of this suit, IBC and the other Pennsylvania Blue Insurance Plans sought approval of their reserves and surpluses by the Insurance Commissioner. The Commissioner issued a determination and order February 9, 2005, which laid out the range of acceptable surplus levels and ordered for the 2003 calendar year IBC's surplus level was "efficient." Insurance Department Order, Re: Applications of Capital Blue Cross, *et al.*, Misc. Docket No. MS05–02–006, at 1.

Additionally, appellants filed a complaint in the Insurance Department requesting the Insurance Commissioner make a determination that IBC's surpluses and reserves are excessive and order appropriate relief. The Insurance Commissioner issued an order dismissing the complaint because appellants did not utilize the proper vehicle to raise their challenge; a class action complaint was not the proper vehicle. Order of Insurance Commissioner, Docket No. FC03–01–036, filed June 17, 2004.

all of appellants' issues; thus, it has exclusive jurisdiction over the claim. *See generally Empire Sanitary Landfill, Inc. v. Commonwealth, Department of Environmental Resources,* 546 Pa. 315, 684 A.2d 1047, 1053 (1996) (quoting *National Solid Wastes Management Association v. Casey,* 135 Pa. Cmwlth. 134, 580 A.2d 893, 897 (1990), *aff'd,* 533 Pa. 97, 619 A.2d 1063 (1993)) ("A court is '[t]o defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result.'"). Appellants can pursue their challenge to the alleged excessive reserves and surpluses IBC held through the Insurance Department. 1 Pa.Code § 35.9.

Therefore, I would affirm the Commonwealth Court's grant of preliminary objections.