Daniel McDUFFIE, on behalf of himself and all others similarly situated, Plaintiff,

v.

STEWART TITLE GUARANTY COMPANY, Defendant.

Class Action No. 2:08–cv–5038–LDD.

United States District Court, E.D. Pennsylvania.

May 15, 2009.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, Philip S. Friedman, Friedman Law Offices, PLLC, Washington, DC, Richard S. Gordon, Quinn Gordon & Wolf Chtd., Towson, MD, for Plaintiff.

Lauren P. McKenna, Robert S. Tintner, Fox Rothschild LLP, Philadelphia, PA, for Defendant.

### ORDER

LEGROME DAVIS, District Judge.

AND NOW, this 30th day of March 2009, upon consideration of Defendant's Motion to Dismiss (Doc. No. 9), Plaintiff's Opposition thereto (Doc. No. 16), and Defendant's Reply (Doc. No. 17), it is hereby ORDERED that Defendant's Motion is GRANTED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Daniel McDuffie brings this putative class action against Defendant Stewart Title Guaranty Company alleging that Defendant charged premiums for title insurance that are in excess of the rates permitted under Pennsylvania law. (Compl. ¶ 1.) The Pennsylvania Title Insurance Companies Act ("TICA"), 40 Pa. Stat. Ann. § 910–1 *et seq.*, regulates title insurance companies and their agents. In particular, as relevant to the matter at hand, TICA mandates that title insurance companies either file proposed rates with the Insurance Commissioner or become members of a licensed rating organization that makes such filings. 40 Pa. Stat. Ann. § 910–37(a) to (b). Defendant is a title insurance company. (Compl. ¶ 8.) Defendant is a member of a licensed rating organization called the Title Insurance Rating Bureau of Pennsylvania ("TIRBOP"). (Compl. ¶¶ 15–16.)

TIRBOP's filed rates are set forth in the Title Insurance Rate Manual of the Commonwealth of Pennsylvania ("Rate Manual," attached as Ex. A to Compl.). (Compl. ¶ 17.) The Rate Manual in effect during the proposed class period establishes at least 3 rates, including a basic rate, a reissue rate, and a refinance rate. (Rate Manual §§ 5.3, 5.6, 5.50.) Whenever an application for a new title insurance policy is made within 10 years of a previously issued title insurance policy on the same property, Defendant must charge a reissue rate. (*Id.* § 5.3.) The reissue rate is equivalent to 90% of the basic rate. (*Id.* § 5.50.) When an application for a new title insurance policy is made within 4 years of a previously issued title insurance policy on the same property and there has been no change in fee simple ownership, Defendant is obligated to charge a refinance rate. (*Id.* § 5.6.) The refinance rate is equivalent to between 70% and 80% of the reissue rate. (*Id.*) According to Plaintiff, Defendant has failed to honor the reissue and refinance rates. (Compl. ¶ 27.)

For example, Plaintiff purchased a home on May 13, 2002, financing his purchase with a $64,458 mortgage. (*Id.* ¶ 28.) He purchased a title insurance policy covering the full value of the loan. (*Id.* ¶ 29.) Plaintiff then refinanced the mortgage on October 29, 2007. (*Id.* ¶ 30.) The closing and settlement services for the refinance were provided by a company called Renaissance Settlements, LLC, a company that is an agent of Defendant. (*Id.* ¶ 30.) The loan amount for the refinance was $84,000, and Renaissance Settlements, LLC issued a title insurance policy with a face value of $84,000. (*Id.* ¶¶ 32–33.) Defendant charged Plaintiff a premium of $762.75 for this policy. (*Id.* ¶ 34.) Plaintiff was entitled to a reissue rate premium of $686.48. (*Id.* ¶ 35.) Thus, Plaintiff claims that he was overcharged by $76.27. (*Id.* ¶ 36.) Plaintiff commenced this action by filing his Complaint on October 22, 2008. He alleges violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607, money had and received, unjust enrichment, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat.

Ann. § 201–1 *et seq.* Defendant has now filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based on Plaintiff's failure to exhaust administrative remedies.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." When evaluating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept as true all factual allegations set forth in the complaint. *See Malia v. General Electric Co.,* 23 F.3d 828, 830 (3d Cir.1994). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions,'" *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (internal quotation marks omitted). In other words, " 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir.2008) (quoting *Twombly,* 127 S.Ct. at 1965). Therefore, a claim may be dismissed when the facts alleged and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 179–80 (3d Cir.1988).

## III. DISCUSSION

Defendant argues that Plaintiff's Complaint should be dismissed for failure to state a claim because Plaintiff has failed to exhaust his administrative remedies.[1] (Def.'s Mem. Supp. Mot. Dismiss at 9.) Specifically, Defendant contends that section 910–44(b) of TICA provides a mandatory statutory remedy that Plaintiff was required to exhaust prior to filing a lawsuit. (*Id.*) As an initial matter, we acknowledge that "[i]t is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton,* 107 F.3d 1018, 1021 (3d Cir.1997). "Therefore, a court need not pass upon the merits of a plaintiff's substantive claim until it satisfies itself that the claim is properly before it, including determining whether the plaintiff properly exhausted administrative remedies." *Wilson v. MVM, Inc.,* 475 F.3d 166, 173 (3d Cir.2007). Plaintiff admits that he did not exhaust any remedy provided by section 910–44(b) and answers Defendant's argument primarily by asserting that section 910–44(b) provides no mandatory or required administrative remedy.[2] (Pl.'s Mem. Opp'n Mot. Dismiss

1. While some courts have resolved this issue under Federal Rule of Civil Procedure 12(b)(1), Third Circuit precedent suggests resolution under Federal Rule of Civil Procedure 12(b)(6). *See MCI Telecommunications Corp. v. Teleconcepts, Inc.,* 71 F.3d 1086, 1110 (3d Cir.1995) (state-created administrative remedy cannot divest federal court of subject matter jurisdiction) (citing *Liberty Mut. Ins. Co. v. K.A.T., Inc.,* 855 F.Supp. 980, 984–85 (N.D.Ind.1994)).

2. Anticipating that we might find a mandatory remedy in section 910–44(b), Plaintiff argues in the alternative that he need not exhaust any remedy provided by section 910–44(b) because any such remedy is inadequate. (Pl.'s Mem. Opp'n Mot. Dismiss at 21.) According to Plaintiff, section 910–44(b) is inadequate because it only authorizes a refund for overcharges but does not authorize the award of damages or other relief. (*Id.*) Plaintiff relies on *Feingold v. Bell of Pa.,* 477 Pa. 1, 383 A.2d 791, 794–96 (1977). At issue in *Feingold* was the Public Utility Law, 66 Pa. Cons.Stat. Ann. § 1101 *et seq.,* which permitted the Public Utility Commission to correct abuses by imposing fines and seeking judicial enforcement. *Id.* at 794. The Public Utility Law

at 12–20.) Thus, the parties ask us to decide whether section 910–44(b) of TICA establishes a mandatory remedy or a permissive remedy.

The Pennsylvania Supreme Court has not yet resolved this issue. "With respect to an issue of state law ..., when there is no decision from the state's highest court directly on point, we are charged with predicting how that court would resolve the issue." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236 (3d Cir.2006) (quoting *Canal Ins. Co. v. Underwriters of Lloyd's of London*, 435 F.3d 431, 436 (3d Cir.2006)). "When predicting how the state's highest court would resolve the issue, we must take into consideration: (1) what the court has said in related areas; (2) the decisional law of the state intermediate courts; (3) federal cases interpreting state law; and (4) decisions from other jurisdictions that have discussed the issue." *Id.* (citing *Canal Ins. Co.*, 435 F.3d at 436). "Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise." *Id.* (quoting *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271, 273–74 (3d Cir.1985)).

As the parties observe, we are not the first court asked to resolve this question in the context of nearly identical facts and claims. To support their argument, Plaintiff relies primarily on *Cohen v. Chicago Title Insurance Co.*, No. 06–873, 2006 WL 1582320 (E.D.Pa. June 5, 2006), and *Markocki v. Old Republic National Title Insurance Co.*, 527 F.Supp.2d 413 (E.D.Pa. 2007). In both *Markocki* and *Cohen*, district courts in the Eastern District of Pennsylvania held that Section 910–44(b) of TICA does not require the exhaustion of administrative remedies before seeking a private right of action. *Markocki*, 527 F.Supp.2d at 418; *Cohen*, 2006 WL 1582320 at *2. Defendant, on the other hand, relies on *White v. Conestoga Title Insurance Co.*, Nos. 03898, 010082, 2008 WL 2227297 (Pa.Ct.Com.Pl. Apr. 24, 2008), and *Uyehara v. Guarantee Title and Trust Co.*, Nos. 1679, 06–081086, 2008 WL 2227295 (Pa.Ct.Com.Pl. Apr. 24, 2008). *White* and *Uyehara* are decisions issued by the Pennsylvania Court of Common Pleas both holding that Section 910–44(b) of TICA provides an exclusive remedy that plaintiffs must exhaust prior to pursuing a lawsuit. *White*, 2008 WL 2227297 at *7–8; *Uyehara*, 2008 WL 2227295 at *7–8. We must add to the landscape described by the parties. Very recently, in *Amato v.*

provided aggrieved people no method for seeking monetary relief, and the Pennsylvania Supreme Court therefore held that under Pennsylvania law the plaintiff did not have to exhaust administrative remedies because the plaintiff could not have been "made whole" by the Public Utility Commission. *Id.* at 794–95. Here, by Plaintiff's own admission, the Public Utility Law is distinguishable from section 910–44(b). Plaintiff admits that section 910–44(b) does provide monetary relief in the form of a refund for amounts overcharged. (Pl.'s Mem. Opp'n Mot. Dismiss at 21.) Further, in the Complaint, Plaintiff summarizes this action as seeking "to recover the excess and unearned premiums improperly collected

by Defendant and its agents." (Compl. ¶ 2.) Thus, Plaintiff can be made whole by pursuing the remedy set forth in section 910–44(b), and *Feingold* does not apply. *Amato*, 2009 WL 691983 at *8 & n. 5. Moreover, as discussed below, the Pennsylvania Superior Court found a virtually identical remedy scheme adequate in *Maryland Casualty Co. v. Odyssey Construction Corp.*, 894 A.2d 750, 756 (Pa.Super.Ct.2006). *See White v. Conestoga Title Insurance Co.*, Nos. 03898, 010082, 2008 WL 2227297, at *4–5 (Pa.Ct.Com.Pl. Apr. 24, 2008); *Uyehara v. Guarantee Title and Trust Co.*, Nos. 1679, 06–081086, 2008 WL 2227295, at *5–6 (Pa.Ct.Com.Pl. Apr. 24, 2008).

*United General Title Insurance Company,* a district court in the Eastern District of Pennsylvania followed the reasoning set forth in the *Uyehara* and *White* decisions. No. 08–3423, 2009 WL 691983, at *5 (E.D.Pa. Mar. 17, 2009). While we respect the reasoning provided in the *Cohen* and *Markocki* decisions, we are also persuaded by the reasoning provided in the *Uyehara* and *White* decisions.

■ We begin our analysis with the language of the regulation. Section 910–44(b) of TICA provides:

Every rating organization and every title insurance company which makes its own rates shall provide, within this Commonwealth, reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or title insurance company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or title insurance company on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days written notice to the appellant and to such rating agency or insurer, may affirm or reverse such action.

40 Pa. Stat. Ann. § 910–44(b).[3] The *Amato*, *White*, and *Uyehara* decisions relied on the Pennsylvania Superior Court's decision in *Maryland Casualty Co. v. Odyssey Contracting Corp.*, 894 A.2d 750 (Pa.Super.Ct.2006). In *Maryland Casualty*, the Superior Court concluded that the Workers' Compensation Act, 77 Pa. Stat. Ann. § 1035.17, provides an exclusive and mandatory administrative remedy. It is instructive to compare the text of section 910–44(b) of TICA to the text of the Workers Compensation Act provision addressed in *Maryland Casualty*. In relevant part, section 1035.17 states:

(a) Each rating organization and every insurer to which this article applies which makes its own rates shall provide within this Commonwealth reasonable means whereby any person aggrieved by the application of its rating system may be heard in person or by the person's authorized representative on the person's written request to review the manner in which such rating system has been applied in connection with the insurance afforded the aggrieved person. . . .

(b) If the rating organization or insurer fails to grant or reject the aggrieved person's request within thirty (30) days after it is made, the applicant may proceed in the same manner as if the application had been rejected.

(c) Any party affected by the action of that rating organization or insurer on the request may, within thirty (30) days after written notice of that action, make

3. Plaintiff argues that because he seeks to enforce title insurance rates rather than challenge them, the remedy provided by section 910–44(b) is inapplicable. Review of the text of section 910–44(b) disposes of this argument. Section 910–44(b) provides a remedy for "any person aggrieved by the application" of a rating system developed by "every rating organization and every title insurance company which makes its own rates." 40 Pa. Stat. Ann. § 910–44(b). By admitting that he seeks to enforce title insurance rates, Plaintiff admits that he is a person "aggrieved by the application" of those title insurance rates. Thus, Plaintiff falls within the scope of section 910–44(b).

application in writing for an appeal to the commissioner, setting forth the basis for the appeal on the grounds to be relied upon by the applicant.

77 Pa. Stat. Ann. § 1035.17(a) to (c). It is obvious that the remedy established by section 910–44(b) is indistinguishable from the remedy provided by section 1035.17 found to be exclusive in *Maryland Casualty.*[4] *Amato,* 2009 WL 691983 at *5. Both statutes require insurers to provide a means by which an individual aggrieved by the application of the insurer's rating system may be heard. Both statutes establish that, from there, the aggrieved party "may" appeal to the commissioner, who has the ability to affirm or reverse the insurer's decision. The statutes both give insureds discretion in whether to abandon or proceed with a complaint, but the statutes do not give insureds discretion as to where to seek relief.[5] *See White,* 2008 WL 2227297 at *3 n. 1; *Uyehara,* 2008 WL 2227295 at *4 n. 2.

Following the lead of the *Maryland Casualty* decision, the *Uyehara* and *White* decisions find further support for section 910–44(b)'s mandatory and exclusive nature in section 1504 of the Statutory Construction Act, 1 Pa. Cons.Stat. Ann. § 1504. Section 1504 provides:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into affect.

1 Pa. Cons.Stat. Ann. § 1504. Section 1504 requires that "when a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive." *Maryland Casualty,* 894 A.2d at 754 (citation omitted). Thus, under section 1504, a court is without power to act until statutory remedies have been exhausted. *Id.* (citation omitted).

It is beyond dispute that section 910–44(b) provides a remedy, and Plaintiff therefore cannot pursue this action without exhausting that remedy. Because Plaintiff admits that he has not pursued the remedy provided by section 910–44(b), he has failed to state a claim.

---

4. Plaintiff argues that the facts of this case are more analogous to those presented in *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427, 430 (1986). In *Pekular,* the Pennsylvania Superior Court held that the Unfair Insurance Practices Act ("UIPA"), 40 Pa. Stat. Ann. § 1171.1 *et seq.,* did not bar pursuit of a common law action for fraud. 513 A.2d at 430–31. Much different from section 410–44(b), UIPA only provided the Insurance Commissioner of Pennsylvania with authority to determine whether UIPA had been violated and impose sanctions when violations are found. *Id.* at 429–30. It provided no remedy by which people aggrieved by such violations might recover from offenders. *Id.* at 430.

5. Plaintiff cites inapposite authority in attempting to persuade us to reach the opposite conclusion. *See, e.g., Schappell v. Motorists Mutual Ins. Co.,* 594 Pa. 94, 934 A.2d 1184, 1187–89 (2007) (where regulation did not "set forth a remedy ..., much less an exclusive one"); *Ciamaichelo v. Independence Blue Cross,* 589 Pa. 415, 909 A.2d 1211, 1215 n. 5 (2006) (not addressing doctrine of exhaustion of remedies because that doctrine was not raised on appeal); *Terminato v. Pa. Nat'l Ins. Co.,* 538 Pa. 60, 645 A.2d 1287, 1290 (1994) (doctrine of exhaustion of remedies did not apply where remedy sought was not within scope of statutory provision); *Ohio Cas. Group of Ins. v. Argonaut Ins.,* 514 Pa. 430, 525 A.2d 1195, 1198 (1987) (same); *Elkin v. Bell Tel. Co.,* 491 Pa. 123, 420 A.2d 371, 377 (1980) (applying doctrine of primary jurisdiction where matter at issue was within area of agency competence); *Feingold v. Bell of Pa.,* 477 Pa. 1, 383 A.2d 791, 795 (1977) (doctrine of exhaustion of remedies does not apply where administrative remedy is inadequate).

## IV. CONCLUSION

For the reasons set forth above, we conclude that section 91–44(b) of TICA provides a mandatory statutory remedy that Plaintiff was required to exhaust prior to seeking relief from this Court.[6] Accordingly, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 9) is GRANTED and Plaintiff's Complaint is DISMISSED.

The Clerk of Court is directed to close this matter for statistical purposes.

---

**6.** Given this conclusion, we need not address the remaining arguments raised by Defendant in support of its Motion to Dismiss.