**[J-3-2022] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| REHABILITATION AND COMMUNITY PROVIDERS ASSOCIATION, AND WESTMORELAND COUNTY BLIND ASSOCIATION, AND ASSOCIATED PRODUCTION SERVICES, INC., AND UNITED CEREBRAL PALSY OF CENTRAL PENNSYLVANIA, INC. AND SCOTT HOWARD SCHWARTZ, BY AND THROUGH KAREN NEWMAN AND LINDA S. SCHWARTZ, CO GUARDIANS, AND RYAN BRETT BY AND THROUGH HIS GUARDIAN FRANCIS BRETT, | : : : : : : : : : : : : | No. 13 MAP 2021<br><br>Appeal from the Order of the Commonwealth Court at No. 543 MD 2019 dated February 3, 2021.<br><br>ARGUED: March 8, 2022 |
| Appellants | : : : | |
| v. | : : : : | |
| DEPARTMENT OF HUMAN SERVICES OFFICE OF DEVELOPMENTAL PROGRAMS, | : : : : : | |
| Appellee | : : | |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED: September 29, 2022**

I join the majority opinion in full, and write separately to highlight certain issues for the Commonwealth Court's consideration on remand. First, I do not read the Majority Opinion as a determination on the merits that appellant Rehabilitation and Community Providers Association ("RCPA") was not required to exhaust administrative remedies. As the majority explains, DHS's preliminary objection regarding a failure to exhaust referred to Westmoreland County Blind Association, Associated Production Services, Inc., and

United Cerebral Palsy of Central Pennsylvania, Inc. ("the Providers") only. Accordingly, we decide only the exhaustion requirements of the Providers. *See* Majority Opinion at 9, 17.

Notwithstanding our narrow holding in this regard, I recognize DHS argued for the first time to this Court that RCPA was properly dismissed below because it failed to exhaust its administrative remedies, and the Commonwealth Court therefore lacked jurisdiction. *See* DHS Appellee Brief at 21. The "defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law" are nonwaivable defenses that may be raised even after a party fails to raise them by preliminary objection, answer, or reply. Pa.R.C.P. 1032(a). In my view, this means that our disposition of the present appeal does not preclude DHS from raising the issue in the Commonwealth Court on remand. And, as there seems to be disagreement regarding whose interests RCPA is representing,[1] determination of this particular issue would benefit from the Commonwealth Court's factfinding in the first instance.

Second, while I agree with our decision to remand for consideration of the outstanding preliminary objections, I question whether the Commonwealth Court and the Bureau should concurrently review the same issues. In my view, our remand does not give the Commonwealth Court *carte blanche* to decide issues that otherwise should be decided in the first instance by the Bureau, even as they pertain to Mr. Schwartz and Mr. Brett ("the Individuals") and RCPA. The Commonwealth Court should instead consider the extent to which its factfinding will implicate questions that would typically be

---

[1] *Compare* Appellants' Brief at 9 (arguing RCPA's membership includes "a diverse mix of non-provider entities with various roles, responsibilities and interests in the relationship between the rates . . . and the population of intellectually disabled people who are served by and rely on the programs funded by those rates"), *with* DHS Appellee Brief at 23 n.5 ("Contrary to Appellants' assertion in their Brief, RCPA is a provider organization, and as a result, its members who believe that they have been harmed by the Notice of Fee Schedule Rates for CPS Services have an administrative remedy.").

addressed by the Bureau first, and, if applicable, to act (or wait to act) in accordance with the doctrine of primary jurisdiction.

In describing primary jurisdiction, this Court has acknowledged "the reality that frequently both the courts and administrative agencies must each play roles in the adjudication of certain matters[.]" *Elkin v. Bell Tel. Co. of Pa.*, 420 A.2d 371, 375 (Pa. 1980). Given this reality, the flexible doctrine of primary jurisdiction "creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Id.* at 376 (internal citation omitted). The doctrine "'requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Weston v. Reading Co.*, 282 A.2d 714, 723 (Pa. 1971), *quoting United States v. Phila. Nat'l Bank*, 374 U.S. 321, 353 (1963). Deferral to an agency in such circumstances "is necessary to promote 'proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Id.*, *quoting U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956); *see also Ciamaichelo v. Indep. Blue Cross*, 909 A.2d 1211, 1218 (Pa. 2006). Pennsylvania courts have acknowledged the primary jurisdiction doctrine "applies where the administrative agency cannot provide a means of complete redress to the complaining party and yet the dispute involves issues that are clearly better resolved in the first instance by the administrative agency charged with regulating the subject matter of the dispute." *Ostrov v. I.F.T., Inc.*, 586 A.2d 409, 413 (Pa. Super. 1991).[2]

---

[2] It appears courts may raise the primary jurisdiction doctrine *sua sponte* "since the doctrine functions to ensure proper distribution of power between judicial and administrative bodies (and not for the convenience of the parties)[.]" *Mars Emergency Med. Servs., Inc. v. Twp. of Adams*, 740 A.2d 193, 198 (Pa. 1999) (Saylor, J. dissenting), *citing Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996) (raising primary jurisdiction *sua sponte*); *W. Pac. R.R. Co.*, 352 U.S. at 63 (same); *see*

This Court has identified various purposes of the doctrine, and they provide insight as to when a court should defer its proceedings to allow an agency to act first: (1) to "mak[e] use of the agency's special experience and expertise in complex areas with which judges and juries have little familiarity[;]" (2) to allow courts to consider "the statutory purpose in the creation of the agency—the powers granted by the legislature and the powers withheld[;]" and (3) "the need to promote consistency and uniformity in certain areas of administrative policy." *Elkin*, 420 A.2d at 376. "[O]nce the court properly refers a matter or a specific issue to the agency, that agency's determination is binding upon the court and the parties (subject, of course, to appellate review through normal channels), and is not subject to collateral attack in the pending court proceeding." *Id.* (footnotes omitted). But "[c]ourts should not be too hasty in referring a matter to an agency[.]" *Id.* at 377. If the matter is "not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." *Id.*

With respect to the present matter, I observe the General Assembly has empowered DHS to set provider rates, *see* 62 P.S. §403.1(a)(4), and an aggrieved provider to request a hearing before the Bureau to challenge those rates. *See* 67 Pa.C.S. §1102(a). Where the Providers, RCPA, and the Individuals jointly filed one petition making the same allegations, it is foreseeable that both the Bureau and the Commonwealth Court on remand might be tasked with evaluating the same issues on dual tracks. For example, the majority explains there are factual questions surrounding

---

*also Jackson v. Centennial Sch. Dist.*, 501 A.2d 218, 219 (Pa. 1985) (deciding the case based on the principles of, *inter alia*, primary jurisdiction and exhaustion even though the parties framed the issue as one involving subject matter jurisdiction); *Weston*, 282 A.2d at 723 (describing a court's abstention as "require[d]" and "necessary" where an agency has primary jurisdiction). But to be sure, if on remand an issue arises over which the Bureau has primary jurisdiction, I see no reason why DHS would be precluded from moving to stay proceedings at that point.

the threshold issue of standing: DHS argues the Individuals' alleged harm is too remote, but the Individuals argue they have standing because they will certainly lose their services due to the allegedly inadequate rates. Majority Opinion at 18 n.19. Any factual inquiry into that dispute would significantly overlap with one of the issues pertaining to the Providers, *i.e.*, whether the rates set by DHS are so insufficient that the Providers can no longer supply their services. The Bureau will likely also have to address that issue when adjudicating the Providers' claims.

This potential overlap highlights the utility of the primary jurisdiction doctrine. If the Commonwealth Court and the Bureau were to simultaneously adjudicate the same issues, it is easy to imagine how the administrative scheme established by the legislature could be undermined. For instance, parties with administrative remedies might try to skirt the exhaustion requirement. Here, for example, if the Providers wished to avoid the exhaustion requirement, they could simply provide assistance to the Individuals and RCPA (assuming RCPA is not required to exhaust) in making their cases. In fact, it is unclear how the Individuals and RCPA would be able to prove their assertion that the rate schedule insufficiently funds the Providers without cooperation from those Providers. If the Commonwealth Court reached a decision that either validated or invalidated the rates before the agency completed its own adjudication, the agency would be bound by that precedent when adjudicating the claims brought by the Providers. Moreover, if DHS were to lose on a particular fact issue in the Commonwealth Court, the Providers could potentially assert the collateral estoppel doctrine to preclude DHS from relitigating that issue in front of the Bureau. *See, e.g.*, *Office of Disciplinary Counsel v. Kiesewetter*, 889

A.2d 47, 50-51 (Pa. 2005).[3]  This could in turn prevent the Bureau from deciding issues the legislature has identified as among those the Bureau is uniquely qualified to decide.

On the other hand, even if such preclusion principles did not apply, there would be a risk of inconsistent rulings between the Commonwealth Court and the agency.  The primary jurisdiction doctrine safeguards against such subversions of the established administrative scheme.  The Commonwealth Court should therefore postpone its consideration if it determines the Bureau has primary jurisdiction over a particular issue that arises on remand.

For these reasons, I do not read our remand as a directive that the Commonwealth Court immediately decide issues that ought more properly be decided in the first instance by the agency.

---

[3] The *Kiesewetter* Court explained:  "The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." *Kiesewetter*, 889 A.2d at 50-51 (internal citation omitted).